[Civ. No. 30903. First Dist., Div. Four. Mar. 8, 1973.]

PHILIP C. JOHNSON, Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA, Defendant and Respondent.

## COUNSEL

Wylie, Leahy, Blunt & McBride and David W. Leahy for Plaintiff and Appellant.

William M. Siegel, County Counsel, and Robert T. Owens, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**BRAY, J.**\*—Appeal by plaintiff and appellant from judgment of the Santa Clara County Superior Court.

### Question Presented

Appellant's action is not protected by the First Amendment.

### Record

Appellant was a deputy probation officer in the Juvenile Probation Department of Santa Clara County. Michael Kuzirian, supervisor of probation services, received a request by one McDonald, a deputy probation officer, to be put back into field work. Determining that McDonald would be best placed in the unit where appellant was working, Kuzirian decided to transfer appellant to the dependency investigation unit because he had only had experience with delinquency cases, and to appoint McDonald to appellant's position. Kuzirian felt the transfer would be good for appellant's professional growth and that he would be valuable to the new unit since he is bilingual.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

When informed of the transfer, appellant expressed his regret. That evening he wrote the poem appearing in the footnote.[1]

Appellant showed his poem to a few of his friends in the office and to his immediate supervisor. One of the employees of the probation department, after asking appellant's permission, copied the poem and posted it on her wall.

As a consequence of this posting, the poem came to the attention of various supervisory personnel, who notified the chief juvenile probation officer, Robert Nino. Mr. Nino felt some disciplinary action was necessary and he consulted with several people to obtain their reactions, including two superior court judges sitting on the juvenile court. On February 17, 1971, Mr. Nino met with appellant and asked appellant why he had written the poem. After appellant told Mr. Nino that this was his means of expressing his dissatisfaction with the transfer, Mr. Nino fired appellant.

---

[1]From Out Here
I am the person
who when you leave me
free to do
what I feel
is right will work
my butt off    Most
responsible
when I sense
you trust me    Include
me in your plans    I'll help
                    you reach a dream

Don't put me down
cut me low    Don't burn
me shine me on    Don't
treat me like a pawn
and try to push me
all around your big
heavy chessboard    I won't
be your piano key
cause I know how to make
my own music

When you leave me
out, let me know
I don't count, show me
you don't care
you help me hate you

So when you feel
the bomb
blow you out
your window    Remember
you put the fuse in

Nino charged appellant in proceedings under article VIII, section 810, of the Santa Clara County Charter, with (1) incompetency in the performance of duties, including failure to discharge duties in a competent and responsible manner, and (2) conduct unbecoming a county officer or employee which tends to discredit the county or county services.

A hearing was had before the county personnel board. The testimony was uncontradicted that appellant was an excellent probation officer. His immediate supervisor testified that after notification of his transfer he got his case load ready for the new probation officer and did an excellent job in making the transition as smooth as possible. Even after appellant was dismissed, his replacement came to appellant's home and received help with the problems of the cases.

Appellant testified that in the first stanza of the poem he was talking about the positive potential of individuals to contribute to society. In the second stanza he was speaking of people working together and the negative result that occurs when people are treated like objects rather than persons. In the last stanza, appellant was trying to express how things can "fall apart" when mutual cooperation disintegrates.

There was no work stoppage or interruption of the delivery of the department's professional services, including appellant's, either quantitatively or qualitatively, as a result of the posting of appellant's poem. Work continued normally and the poem was allowed to remain posted for seven days after the department head knew of it.

The Personnel Board of the County of Santa Clara found that the county had not sustained the charge that appellant was incompetent in the performance of duties nor that appellant conducted himself in a manner unbecoming a county officer or employee. The board recommended that appellant be reinstated. Under section 810 of the county charter, such findings and recommendations are advisory to the county executive, whose decision is final and conclusive.

The county executive felt that there was sufficient evidence presented to the personnel board to sustain the second charge. The executive ordered appellant suspended without pay for one month and transferred from the juvenile probation department to the adult probation department. The Santa Clara Superior Court denied appellant's application for writ of mandate for an order directing respondent to set aside its decision. The judge of the superior court upheld the action of the county executive by finding that in this administrative review under Code of Civil Procedure section 1094.5, the record showed that there was substantial evidence to sustain the county executive's findings and action.

As stated in *L. A. Teachers Union* v. *L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 557 [78 Cal.Rptr. 723, 455 P.2d 827], ". . . the reviewing court in free speech cases must make an independent examination of the whole record." In the instant case, as there was no conflict in the evidence and as the court, although it referred to the substantiality of the evidence, did pass upon the legal effect of the respondent's action, it is unimportant as to the court's manner of hearing the appeal, because it involves only a question of law. (See *San Diego T. & S. Bank* v. *San Diego* (1940) 16 Cal. 2d 142, 153 [105 P.2d 94, 133 A.L.R. 416], cert. den. 312 U.S. 679 [85 L.Ed. 1118, 61 S.Ct. 449]; *King* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 199, 203-204 [101 Cal.Rptr. 660].)

Respondent contends that appellant has the burden of showing that he was dismissed from his employment for the exercise of constitutional rights. *Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 779 [97 Cal.Rptr. 657, 489 P.2d 537] (cert. den. 405 U.S. 1030 [31 L.Ed.2d 488, 92 S.Ct. 1301]) supports this contention. However, there is no question that appellant was disciplined because he wrote the poem quoted in the statement of facts and was responsible for its publication in the probation department. The crux of this appeal is to determine, as a matter of law, whether this poem and its use are exercises of appellant's First Amendment rights and, if it is so determined, whether appellant may be disciplined for exercising those rights.

■ A governmental agency seeking to impose restrictions on the exercise of an employee's constitutional rights must demonstrate that: (1) the governmental restraint rationally relates to the enhancement of the public service; (2) the benefits that the public gains by this restraint outweigh the resulting impairment of the constitutional right; and (3) no alternatives less subversive to the constitutional right are available. (*Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 501-502 [55 Cal. Rptr. 401, 421 P.2d 409].) *Pickering* v. *Board of Education* (1968) 391 U.S. 563 [20 L.Ed.2d 811, 88 S.Ct. 1731], is not in point. In *Pickering*, the appellant, a teacher in Illinois, was dismissed from his position by the board of education for sending a letter to a local newspaper in connection with a recently proposed tax increase that was critical of the way in which the board and the district superintendent of schools had handled past proposals to raise new revenue for the schools. The appellant was dismissed after the board determined that the publication of the letter was detrimental to the efficient operation and administration of the schools of the district. The Supreme Court in reversing the dismissal of the appellant said that the problem presented by the case was to arrive at a "balance between the interests of the teacher, as a citizen, in commenting upon

matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *(Id.* at p. 568 [20 L.Ed.2d at p. 817].) In *Pickering* there was no indication, as there is in the instant case, that the person involved demonstrated an attitude of noncooperation if the rules were not to his liking.

■ It has been established in California for some time that a person cannot be barred from public employment in disregard of his constitutional rights. *(Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385].) The state may curtail First Amendment rights only when it can show a compelling state interest in so doing. *(Id.* at p. 337.) In order for the state to demonstrate a significant interest in the impairment of First Amendment rights it must meet the criteria as set out in *Bagley.* The state bears the heavy burden of demonstrating the practical necessity for limitation. (*Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18, 21 [64 Cal.Rptr. 409, 434 P.2d 961].) "It must appear that restrictions . . . are not broader than are required to preserve the efficiency and integrity of its public service." *(Fort* v. *Civil Service Commission, supra,* at p. 338.)

■ Government Code section 19572 provides, in pertinent part, that ". . . failure of good behavior either during or outside of duty hours which is of such nature that it causes discredit to his agency or his employment" constitutes cause for removal of a public employee. It was under this section that appellant was charged with, and proved guilty of, conduct unbecoming a county officer or employee which tends to discredit the county or county service.

In weighing the effect of appellant's actions, it is well to bear in mind the law as applicable to his situation. ■ When the impairment of First Amendment rights appears and when the facts constituting such impairment are not contradicted, the question of whether such impairment is permissible is one of law and not of fact. *(L. A. Teachers Union* v. *L. A. City Bd. of Ed., supra,* 71 Cal.2d 551, 556.)

■ "In determining whether an employee should be disciplined, whatever the cause, the overriding consideration is whether the conduct harms the public service." *(Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 550-551 [102 Cal.Rptr. 50].) "If the misconduct bears some rational relationship to the employment and is of a character that can reasonably result in the impairment or disruption of public service," the employee may be disciplined. *(Id.* at p. 550.)

With these rules in mind we proceed to examine appellant's action, particularly in permitting his poem to be posted for all employees to see and to be influenced by it. It is clear that appellant was angry at being transferred from the juvenile delinquency unit to the juvenile dependency unit of the probation department. The record indicates that the probation department's general policy was to provide for its employees opportunity for professional growth and breadth of experience, and that such policy specifically motivated the proposed transfer—one that his superior had every right to make. It was considered advisable that appellant, who had only had experience with delinquency cases, should get experience in dependency cases. Although, according to the record, such transfers are pretty routine, appellant would have been entitled to inform his superior officer of his objection to being transferred, if such objection were made in a reasonable manner and without publishing his feelings to the entire personnel of the department.

An examination of the poem indicates that appellant was insubordinate, defiant and of an attitude that indicated that he would only conform to rulings of his superior with which he agreed. In the first paragraph appellant indicated that he will only work with a will when left to do what he feels is right ("when you leave me free to do what is right"). By saying don't "try to push me all around your big chessboard," he is saying, in effect, that the department head is abusing his authority and that if a difference of opinion arises between him and the writer, the latter will go his own way ("I know how to make my own music"). Stating to his superior, in private, "you help me hate you," may be permissible but to announce it to the public is hardly conducive to good relations within the department. This statement also indicates that the hate will develop further if, as previously expressed, the writer is not given his own way. Then there is the reference to the "bomb." No doubt it was merely intended as a metaphor, although it is equivocal enough for a juvenile court judge and the trial judge to take it literally as a threat. But it indicates that appellant intends to take some rather strong action against his superior.

There is nothing in the poem to indicate that appellant was trying, on behalf of the other members of the department, to call attention to any actions affecting them and suggesting reform thereof. The entire matter is personal to him. He was making a cause célèbre of his objection to being transferred to another unit within the department, an act which was authorized for his development as well as in the interests of the department.

It is significant that two juvenile court judges, the juvenile justice commission, and the director of personnel all believed that, whether or not the

bomb allusion was to be taken literally, the tone and content of the poem evidenced an attitude toward authority that was incompatible with the successful discharge of the duties of a probation officer who, in dealing with juvenile delinquents, must inculcate and foster respect for parental, school and other legal authority with which a juvenile is in almost daily contact, and, additionally, appellant was setting an example for his fellow probation officers and the employees of the department that was not in the best interests of the department.

The chief probation officer was justified in considering that the poem and its publication was an overly emotional reaction to a transfer made in conformity with routine practice.

The situation is one in which the appellant's expressions are not protected by the First Amendment because as uttered they harmed the public service and hence are not entitled to the absolute protection of the First Amendment.

In factual background the case is analogous to that in *Hollon* v. *Pierce* (1967) 257 Cal.App.2d 468 [64 Cal.Rptr. 808], wherein the contract of a school bus driver was not renewed because he had participated in the publication of a religious book, the tone and content of which, in the opinion of the school superintendent, evidenced an emotional instability that might affect his fitness to drive a school bus. It was not the book itself that caused the school superintendent's action but what the book revealed of Hollon. So, in the instant case, it is not alone the poem itself that caused the disciplinary action but what it revealed of appellant's attitude toward superior authority. *Hollon* negates the proposition that appellant's dissemination of his poem was clothed with absolute First Amendment protection. A probation department and the juvenile court naturally have a compelling interest in a probation officer's attitude toward authority. The fact that appellant had every right to express himself in poetry or otherwise does not render him immune from a good-faith inquiry into attitudes reflected in his exercising of his right. The poem does charge the department head with abuse or authority and indicates a contempt for authority that being known to the members of the department by its posting, does, and if known to probationers and the public, would, reffect discreditably on the department.

Judgment affirmed.

Devine, P. J., and Good, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 16, 1973. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.