82 Cal.App.3d 582 (1978)
147 Cal. Rptr. 300
DENNIS PAUL HETHERINGTON et al., Plaintiffs and Appellants,
v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.
Docket No. 16513.
Court of Appeals of California, Third District.
July 7, 1978.
*585 COUNSEL
Peter E. Sheehan, Henry S. Hewitt and Clifford C. Sweet for Plaintiffs and Appellants.
Paul Perret and Susan Spurlark as Amici Curiae on behalf of Plaintiffs and Appellants.
*586 Evelle J. Younger, Attorney General, and Anthony S. DaVigo, Deputy Attorney General, for Defendants and Respondents.
OPINION
REGAN, J.
In this appeal from a judgment of the trial court denying plaintiffs injunctive and declaratory relief we consider the constitutionality of Government Code section 1029, which prohibits the employment of an ex-felon in any governmental positions classified as peace officers.
Government Code section 1029 reads as follows: "(a) Except as provided in subdivision (b), any person who has been convicted of a felony in this state or any other state, or who has been convicted of any offense in any other state which would have been a felony if committed in this state, is disqualified from holding office or being employed as a peace officer of the state, county, city, city and county or other political subdivision, whether with or without compensation, and is disqualified from any office or employment by the state, county, city, city and county or other political subdivision whether with or without compensation, which confers upon the holder or employee the powers and duties of a peace officer.
"(b) Any person who has been convicted of a felony, other than a felony punishable by death, in this state or any other state, or who has been convicted of any offense in any other state which would have been a felony, other than a felony punishable by death, if committed in this state, and who demonstrates the ability to assist persons in programs of rehabilitation may hold office and be employed as a parole officer of the Department of Corrections or the Department of the Youth Authority if he has been granted a full and unconditional pardon for the felony or offense of which he was convicted. Notwithstanding any other provision of law, the Department of Corrections or the Department of the Youth Authority may refuse to employ any such person as a parole officer regardless of his qualifications.
"(c) Nothing in this section shall be construed to limit or curtail the power or authority of any board of police commissioners, chief of police, sheriff, mayor, or other appointing authority to appoint, employ, or deputize any person as a peace officer in time of disaster caused by flood, fire, pestilence or similar public calamity, or to exercise any power *587 conferred by law to summon assistance in making arrests or preventing the commission of any criminal offense." (Amended by Stats. 1971, ch. 1616, § 1, p. 3476.)
Plaintiff Hetherington (a white male) was informed in 1975 and in 1976 by defendant Personnel Board that due to his prior unpardoned felony convictions he was ineligible to file an application or take an examination for the positions of parole agent I, group supervisor, or youth counselor with the California Youth Authority. He had been convicted of grand theft in 1963 (Pen. Code, §§ 484, 487) and of issuance of a check without sufficient funds in 1967 (Pen. Code, § 476a). He had been paroled from prison in 1969.[1]
Plaintiff Johnson (a black male) was convicted of grand theft in 1968. He has attempted to obtain employment in a peace officer position but has been, and presently is, dissuaded from doing so by the knowledge of the defendant Personnel Board's practice, pursuant to Government Code section 1029, of disqualifying all individuals convicted of any felony.
It was also alleged in the complaint that there are over 40,000 positions in the state defined as peace officer positions; that the felony exclusion of section 1029 has a disproportionate adverse impact against blacks, Spanish-surnamed, Asian-Americans and American Indians; and that the exclusion is not reasonably related to the ability to perform the duties of the positions, nor justified by any compelling business purpose.
A proposed first amended complaint, which was denied filing by the superior court, would have added as a plaintiff Paul T. Takagi (an Asian male) and would have added allegations of the number of ex-felons (about 120,000) who were barred from the large number of positions (about 100,000) in the peace officer category. Also there were proposed *588 allegations of the nature of many peace officer positions which indicate they do not require carrying weapons; and that some of the positions, such as parole agents and counselors in the Youth Authority were of a nature such that ex-felons would be particularly well suited to perform. It was also alleged that certain positions in the Youth Authority not closed to ex-felons have duties similar to those defined as peace officers which were closed. Moreover, it was alleged that the federal government and the majority of states do not absolutely prohibit employment of ex-felons in positions similar to those of parole agents, youth counselors and group supervisors employed by the California Youth Authority.
(1a) Plaintiffs contend it was error to deny the motion for preliminary injunctive relief, since Government Code section 1029 is unconstitutional as violative of the equal protection clauses of the United States and California Constitutions.
There are two standards of review applied by the courts in equal protection questions. The first or conventional standard requires only that differential treatment of classes of individuals have some "reasonable basis" or bear "... `"some rational relationship to a conceivable legitimate state purpose."'" (Schwalbe v. Jones (1976) 16 Cal.3d 514, 517-518 [128 Cal. Rptr. 321, 546 P.2d 1033]; see also Dandridge v. Williams (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 501, 90 S.Ct. 1153].) A second test or standard has been developed to be applied to a classification drawn along lines which renders it "suspect" in constitutional terms or which touches a "fundamental interest." These are matters such as race or sex rights "`explicitly or implicitly guaranteed by the Constitution.'" (See D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 17-18 [112 Cal. Rptr. 786, 520 P.2d 10].) In such case strict scrutiny is required and the state bears a burden of establishing that it has a "compelling interest" which justifies the law and that the classification is necessary to further that purpose or interest. (San Antonio School District v. Rodriguez (1973) 411 U.S. 1, 33-34 [36 L.Ed.2d 16, 43, 93 S.Ct. 1278]; D'Amico v. Board of Medical Examiners, supra, 11 Cal.3d at p. 17; Sail'er Inn, Inc. v. Kirby (1971) 5 Cal.3d 1, 16 [95 Cal. Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)
(2) Plaintiffs contend the classification in Government Code section 1029, based on a criminal record, is a "suspect" classification and that the strict scrutiny, or compelling interest test, should be applied. It is argued by plaintiffs that the broad range of positions encompassed within section 1029 as "peace officers" brings this case within the scope of those *589 occupations called "`the common occupations of the community'" as to which there may be a fundamental interest in the right to pursue employment. (See, e.g., Sail'er Inn, Inc. v. Kirby, supra, 5 Cal.3d at p. 17.) We reject his argument. We do not perceive of the various positions encompassed within the term "peace officer" as used in section 1029, applying only to employment by various agencies of government, to be "common occupations of the community." (See D'Amico v. Board of Medical Examiners, supra, 11 Cal.3d at p. 18; cf. People v. Ryser (1974) 40 Cal. App.3d 1, 6-8 [114 Cal. Rptr. 668].) We know of no explicit or implicit constitutional guarantee of a right to a job with any governmental agency. (See Townsend v. County of Los Angeles (1975) 49 Cal. App.3d 263, 267 [122 Cal. Rptr. 500].) Nor do we consider peace officer positions to be a "major sector of the economy" as claimed by plaintiffs. Even if it could be legitimately said that such positions constitute a major sector of the economy this has never been held to be a critical factor, as such, calling for application of the strict standard test of equal protection.
In short, contrary to plaintiffs' arguments, ex-felons, considered in their posture of exclusion from peace officer employment by section 1029, do not fall within any classification recognized by the courts as "suspect." The alleged discrimination in the complaint does not rise to the level established by court decisions, of discrimination based on sex, race or lineage, or discrimination depriving persons of rights explicitly guaranteed by either the United States or California Constitutions under the equal protection of the laws concept.
It is also urged that the strict scrutiny or compelling interest test should be applied on the basis of race and poverty, due to the asserted fact that racial and ethnic minorities comprise membership in the class of ex-felons at a rate considerably disproportionate to their representation in the adult population of California. Assuming the statute affects a disproportionate percentage of the total minority or ethnic population it would also have to be established that there is a statutorily significant percentage correlation or relationship. We cannot infer such a correlation or relationship and none was alleged in the complaint. In fact, this entire constitutional theory advanced by amicus based on race was not presented below, nor was there any allegation as to an impact of the statute based upon poverty. We find no sound basis upon which to examine into the constitutionality of the statute in question except with respect to the ex-felon category, per se.
*590 (3) Under the rational basis standard or test, the burden is upon the plaintiffs to show that the statute before us bears no rational relationship to a legitimate state purpose. (McDonald v. Board of Election (1969) 394 U.S. 802, 808-809 [22 L.Ed.2d 739, 745, 89 S.Ct. 1404]; Dandridge v. Williams, supra, 397 U.S. at p. 485 [25 L.Ed.2d at p. 501]; Schwalbe v. Jones, supra, 16 Cal.3d at pp. 517-518.) Neither plaintiffs nor amicus has made such a showing.
(1b) In our opinion, the statute on its face bears a rational relationship to a legitimate state purpose. That purpose is to assure, insofar as possible, the good character and integrity of peace officers and to avoid any appearance to members of the public that persons holding public positions having the status of peace officers may be untrustworthy. Courts have frequently recognized such a purpose as to qualifications for various positions or employment important to the public interest. For example, in De Veau v. Braisted (1960) 363 U.S. 144, 158-159 [4 L.Ed.2d 1109, 1119-1120, 80 S.Ct. 1146], the United States Supreme Court upheld a New York statute which, in effect, barred ex-felons from holding office in waterfront labor unions whose members were registered or licensed under the New York Waterfront Commission Act. The court stated, inter alia, that "barring convicted felons from certain employments is a familiar legislative device to assure against corruption...." (Ibid.) The court referred to a large group of federal statutes which disqualify persons from holding any office of honor, trust or profit under the United States, because of their conviction of crimes. The court also pointed to the fact, with approval, that "State provisions disqualifying convicted felons from certain employments important to the public interest also have a long history." (Id., at p. 159 [4 L.Ed.2d at p. 1120].)
In California, our courts have recognized the special position of peace officers in society, with emphasis on public trust and confidence. Thus, in McCain v. Sheridan (1958) 160 Cal. App.2d 174, 177 [324 P.2d 923], it was said with reference to members of the police force, in general, "they can perform their duties only if they merit the trust and confidence of the mass of law-abiding citizens. Whatever weakens that trust tends to destroy our system of law enforcement."
Plaintiffs have laid much stress upon the fact that the term "peace officers," as used in Government Code section 1029, includes many other job categories than police or strictly law enforcement personnel. For example, it includes parole agents and certain youth counselors and group supervisors. They argue that in some cases ex-felons make better or *591 more effective employees in these categories than do those never convicted of a crime. Even assuming this to be true, it is not the test we must apply to the constitutionality of the statute before us. The Legislature has, in fact, recognized in the statute itself that when an ex-felon has shown such rehabilitation as to warrant a pardon, he may be eligible for employment as a parole officer (§ 1029, subd. (b)). Absent such a pardon, the legislative purpose is clear and the statute is rationally related thereto. The postulate of the Attorney General is that the trust and confidence of the general run of law-abiding citizens of this state in their parole officers, prison guards, probation officers, parole agents, youth counselors, group supervisors or any of the other employees the Legislature has seen fit to designate as "peace officers," could be seriously weakened if ex-felons were hired. In our view this postulate is unassailable. With particular reference to the field of juvenile or youth crime and delinquency which is of interest to plaintiffs, the courts are especially solicitous of the character of an officer "who, in dealing with juvenile delinquents, must inculcate and foster respect for parental, school and other legal authority...." (See Johnson v. County of Santa Clara (1973) 31 Cal. App.3d 26, 34 [106 Cal. Rptr. 862].)
Police officers, as such, hold a "peculiar and delicate position" in society. (Frazee v. Civil Service Board (1959) 170 Cal. App.2d 333, 335 [338 P.2d 943].) The determination of what governmental positions, other than police as such, are to be categorized as peace officers, is a legislative matter. The inclusion of various public occupations, assuming reasonableness or rationality, is a policy matter to be pursued through legislative channels.
In summary, we are in complete accord with the views expressed by the United States Court of Appeals in the case of Upshaw v. McNamara (1st Cir.1970) 435 F.2d 1188, wherein that court upheld a Massachusetts statute essentially similar to that before us. That court held, first, that a classification based on a criminal record is not a suspect classification. Also, that the rationale for not hiring a person to a police position who has been convicted of a felony is easily seen, since he might be "thought to lack the qualities of self control or honesty that his sensitive job requires." (Id., at p. 1190.) We have no problem in applying such rationale to occupations which the Legislature has seen fit to designate as peace officers, in addition to policemen as such.
We find no violation of equal protection of laws in Government Code section 1029, either on its face or as it has been applied in this case.
*592 (4) Plaintiffs contend section 1029 violates due process of law, there being no direct relationship between conviction of any felony at any time and the qualifications necessary to engage in the numerous positions affected by section 1029. Plaintiffs also contend section 1029 creates a conclusive presumption violative of due process, because it affects an important right, presumes facts which are not universally true, and the state has alternative means available to determine the truth of the presumed facts. These contentions are tenuous at best.
It is true in general that a person cannot be removed from or denied government employment because of factors totally unconnected with the responsibilities of that employment. (See Morrison v. State Board of Education (1969) 1 Cal.3d 214, 234 [82 Cal. Rptr. 175, 461 P.2d 375]; Vielehr v. State Personnel Bd. (1973) 32 Cal. App.3d 187, 192 [107 Cal. Rptr. 852].) In like vein, some federal cases have held that there must be some reasonably foreseeable specific connection between the disqualifying quality or conduct of an individual and the efficiency of the public service. (Mindel v. United States Civil Service Commission (N.D.Cal. 1970) 312 F. Supp. 485, 488; Norton v. Macy (D.C. Cir.1969) 417 F.2d 1161, 1164; Society for Individual Rights, Inc. v. Hampton (N.D.Cal. 1973) 63 F.R.D. 399, 401.) But we are not dealing here with a disqualifying factor unconnected with the responsibilities of the prospective employment or the efficiency of the public service. We have pointed out sufficiently above that there is a reasonably foreseeable specific connection between the status of being an ex-felon and the responsibilities connected with, and efficiency necessary to, the status or position of a peace officer, as defined by the Legislature. (Cf. Pettit v. State Board of Education (1973) 10 Cal.3d 29, 36 [109 Cal. Rptr. 665, 513 P.2d 889, 78 A.L.R.3d 1].)
Plaintiffs contend due process is violated by section 1029 since it assertedly presumes facts which are not universally true, i.e., "unfitness" to hold a peace officer position, and the state has alternative means to determine the truth of the presumption. This contention is meritless.
Plaintiffs rely on a line of decisions holding under certain circumstances that a conclusive presumption violates due process if (a) the presumed facts are not universally true; (b) reasonable alternative means exist to determine actual facts; and (c) the presumption affects an important right or one enjoying constitutionally protected status. (See, e.g., Vlandis v. Kline (1973) 412 U.S. 441, 452 [37 L.Ed.2d 63, 71, 93 S.Ct. 2230]; Turner v. Dept. of Employment Security (1975) 423 U.S. 44, 46-47 *593 [46 L.Ed.2d 181, 183-184, 96 S.Ct. 249]; In re Lisa (1975) 13 Cal.3d 636, 647-651 [119 Cal. Rptr. 475, 532 P.2d 123].)
As we have indicated above, the "presumption," if such it be considered, in Government Code section 1029, by disqualifying an ex-felon from holding a government position as a peace officer does not affect any right at all. It merely affects a privilege of governmental employment which may be withheld where, as here, there is no arbitrary classification involved in the qualifications, such as would violate the equal protection clauses of the United States or California Constitutions. (See discussion in Weinberger v. Salfi (1975) 422 U.S. 749, 767-777 [45 L.Ed.2d 522, 539-546, 95 S.Ct. 2457].)
Moreover, it must be emphasized that the statute is not pointed solely at unfitness or competence in the sense of being capable or able to do the job, but it is pointed at, and molded by, consideration of other factors. These include such things, implicit in the nature of the subject matter of the legislation, as public faith and confidence in peace officers, morale amongst the ranks of peace officers, problems of ex-felons carrying firearms, and the like.
We find no violation of due process of law in Government Code section 1029, either on its face or as applied in this case.
(5a) Plaintiffs contend that Government Code section 1029 "violates" certain state and federal statutes. It is contended that Government Code section 1029 violates Labor Code section 1420 and Government Code sections 19702.1 and 19702.2, which in essence collectively guarantee what are generally called equal employment opportunities. It is argued by plaintiffs that the operation of section 1029 results in exclusion of a disproportionate percentage of minorities, not justified as a business practice. These arguments are specious. In the first place, one statute does not "violate" another; it may be in conflict, however. (6) In that event it is a long-standing rule of statutory construction that a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates. (See Civ. Code, § 3534; Wilson v. Board of Retirement (1957) 156 Cal. App.2d 195, 211 [319 P.2d 426].) (5b) Moreover, we see no conflict between the statutes. The state equal employment opportunity laws to which plaintiffs refer prohibit discrimination in employment based on race, religious creed, color, national origin, ancestry, physical *594 handicap, medical condition, marital status or sex, or the use of education prerequisites or testing or evaluation methods which are not job related. The status of being an ex-felon has nothing to do with such equal opportunity laws.
Turning to the federal law, in the employment practices provisions of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) it is provided essentially that if an employment practice has a disproportionate adverse effect against any group in terms of race, color, religion, sex or national origin, such employment practice (such as a test or standard) is unlawful, unless it can be shown to be related to job performance. (See 42 U.S.C. § 2000e-2; Griggs v. Duke Power Co. (1971) 401 U.S. 424, 430-431 [28 L.Ed.2d 158, 163-164, 91 S.Ct. 849].) Under these federal statutes, it has been held that an absolute ban from employment in any position, of any person convicted of any crime other than a minor traffic offense, is unlawful where such practice had a disparate impact against blacks and where there is no showing that the employment standard was related to job performance, or justified in terms of "business necessity." (Green v. Missouri Pacific Railroad Company (8th Cir.1975) 523 F.2d 1290, 1295.)
However, where the employer has shown that criminal conduct does bear a relationship to the duties of a particular occupation, such standards have been sustained. In Richardson v. Hotel Corporation of America (E.D.La. 1971) 332 F. Supp. 519, a hotel bellman was properly discharged because of a prior conviction of theft, regardless of racial impact. (See also Lane v. Inman (5th Cir.1975) 509 F.2d 184 (taxi driver, narcotic traffic).) In United States v. City of Chicago (N.D.Ill. 1976) 411 F. Supp. 218, 235, the court said: "[W]e agree that a prior conviction of a serious offense would be a valid ground to disqualify a person from police work. And this would be so regardless of the disproportionate racial impact such a standard might have."
We hold that in the case before us there is a clear relationship or nexus between conviction of a felony and performance of the duties of peace officers in general and that such relationship exists with specific reference to the particular peace officer positions involved in this case. The federal equal employment opportunities statutes (42 U.S.C. § 2000e et seq.) are not violated.
(7) Plaintiffs contend Government Code section 1029 violates 29 United States Code sections 801 and 845, being portions of the statutes known as the Comprehensive Employment and Training Act (29 U.S.C. *595 § 801 et seq.) which provides programs for job training and employment opportunities for economically disadvantaged, unemployed and underemployed persons at federal, state and local levels. (§ 801.)
It is provided in section 845, inter alia, that programs seeking federal financial assistance shall include provisions for assurances that the program will, to the maximum extent feasible, contribute to elimination of artificial barriers to employment and occupational advancement, including civil service requirements which restrict employment opportunities for the disadvantaged.
We can see in Government Code section 1029 no possible violation of the specific provisions of the federal Comprehensive Employment and Training Act referred to above or of any other provisions of that act. The act is a federal aid program and the conditions it imposes are simply conditions precedent to receipt of federal monies.
We find nothing in the federal act which compels the state or any local agency to hire statutorily unqualified peace officers.
In any event, the Comprehensive Employment and Training Act contains no provision which purports to regulate employment practices, except as a prerequisite to the receipt of federal funds for a particular public service employment program. The act confers no right of action in a prospective employee.
We do not reach the question presented by the alleged granting of an executive pardon to plaintiff Hetherington. This event, mentioned only in plaintiffs' opening brief, occurred after the commencement of the action and is not a matter of record.
The judgment is affirmed.
Puglia, P.J., concurred.
REYNOSO, J.
I dissent. The trial court erred in granting judgment on the pleadings. It thereby effectively denied plaintiffs' requested injunctive and declaratory relief without the type of evidentiary hearing required. The trial court and the majority, however, reach the merits. On the limited record available on appeal I disagree with the majority's holding on the merits. Accordingly, I dissent as to the entire opinion.

*596 Procedural Posture

The majority ignore the procedural posture of this case. The entire cause should have gone forward so that we could have had the benefit of a full record. Courts have recognized that constitutional issues like those raised in this case should not be reviewed on appeal on the basis of a limited record. (See D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 13-14 [112 Cal. Rptr. 786, 520 P.2d 10].) It is inexpedient to decide constitutional issues on motion to dismiss because "the production of evidence may well make the answer to these questions more clear." (Guerrero v. Schmidt (W.D.Wis. 1973) 352 F. Supp. 789, 792.) This is so because the courts must review evidence upon which stereotyped generalizations involving suspect classifications are based. (See Hardy v. Stumpf (1974) 37 Cal. App.3d 958, 962 [112 Cal. Rptr. 739].)
On appeal, facts alleged by plaintiffs' complaint must be accepted as true. (Kachig v. Boothe (1971) 22 Cal. App.3d 626, 630 [99 Cal. Rptr. 393].) Since plaintiffs raised constitutional issues in the court below, including triable issues of fact, I consider their rejection without an evidentiary hearing to be reversible error. Nevertheless, since the trial court and the majority have reached the constitutional issues I consider them on the record as we find them.
I am unconvinced by the majority's equal protection holding. First, it summarily rejects the "compelling state interest" test. Second, it analyzes and then reasons that under the "rational basis test" the statute is constitutional. On this imperfect record I conclude that the legislative classification is not rationally related to a legitimate state interest. And, unlike the majority, I conclude that the proper standard is that of compelling state interest. The state legislation appears to fail constitutional muster pursuant to either test.

A
Plaintiffs have carried their burden under the rational basis test. Classifications challenged under the equal protection clauses of the California and federal Constitutions must be "rationally related" to a legitimate state interest. (See U.S. Dept. of Agriculture v. Moreno (1973) 413 U.S. 528, 533 [37 L.Ed.2d 782, 794, 93 S.Ct. 2821]; In re Kapperman (1974) 11 Cal.3d 542, 545 [114 Cal. Rptr. 97, 522 P.2d 657].)

*597 1. Government Code Section 1029 Is Unconstitutional on Its Face

The majority is convinced that the legitimate state purpose behind the ex-felon classification is to (1) assure the "good character and integrity" of peace officers, and (2) avoid in peace officers any appearance of untrustworthiness in the public's eyes. The argument is initially engaging until the statute under attack is examined with care. Government Code section 1029, subdivision (a) bans ex-felons from all "peace officer" positions designated in the statute. The statutory definition of "peace officer," found in Penal Code section 830 et seq. however, includes the most novel and unexpected public positions and even some private positions. (See Pen. Code, § 830 et seq.) Further, it does not include some we would expect to find.
Originally, peace officer status was limited to four very similar, police-type occupations: sheriff, police, marshal and constable. "Peace officers are Sheriffs of Counties, and Constables, Marshals, and Policemen, of cities and towns respectively." (Stats. 1851, ch. 29, § 110, p. 224; see also Revised Laws of the State of California; Pen. Code (1871) § 817, p. 283.) Subsequent amendments have drastically increased its scope to over 100 tenuously related positions (see Pen. Code, § 830 et seq.). Included are the expected  the policemen; but also included are probation officers who have much more limited power and even furniture and bedding inspectors who have yet less power.
Included are employees who exercise no significant police powers at all. For example, California Horse Racing Board and Department of Health Investigators are defined as peace officers. Horse racing investigators are never armed, made no arrests over a 12-month period, and were seldom assaulted. (Cal. Leg., Sen. Com. on Judiciary, subcom. on Peace Officers (Nov. 9, 1976) pp. 78-79 (memorandum from Cal. Horse Racing Bd.).) Health investigators are precluded from carrying firearms (see Pen. Code, § 830.3, subd. (p)), make no arrests, issue no citations, and have never been assaulted. (Ibid., at pp. 90-95 (testimony of Gerry Rohlfes, Chief of Investigations Section, Department of Health).)
On the other hand, employees who can make felony arrests on probable cause are not included. Thus, food and agricultural inspectors are not defined as peace officers. Yet their authority is as broad as that of a peace officer in making arrests.
*598 Finally, the statute includes, as peace officers, persons who are not government employees. Employees of private entities, such as policemen for railroad and steamboat companies and designated personnel of private cemeteries (Pen. Code, § 830.4, subds. (a)(8) and (a)(9)) respectively, are included.
While the connection between private employees of a private cemetery and a cop on the beat may be tenuous, the majority consider the inclusion of such disparate groups a mere legislative decision protected from constitutional attack. It points to De Veau v. Braisted (1960) 363 U.S. 144 [4 L.Ed.2d 1109, 80 S.Ct. 1146] as authority. Not only did the United States Supreme Court sustain the constitutionality of a New York statute banning ex-felons from certain positions, but it commented on the numerous federal and state statutes disqualifying ex-felons from holding public office.
The majority misses the mark. First, the statute in De Veau was a narrowly written, specific prohibition with a clear purpose in mind. The exclusion was not absolute. There, the State of New York had passed a statute prohibiting the agents of unions from soliciting, collecting or receiving any "dues, assessments, levies, fines or contributions" from "pier superintendents, hiring agents, longshoremen and port watchmen" on behalf of any labor organization representing any such employees if any officer of the concerned union was an ex-felon. However, if the ex-felon had been pardoned by the Governor "or other appropriate authority" or had received a "certificate of good conduct" from the parole board, then the disability would be removed. The United States Supreme Court looked to the extensive hearings which showed that for years the New York waterfront presented a "notoriously serious situation." It cited mounting abuses and the "skulduggeries" of the longshoremen's union. The employee positions cited by the statute were those particularly subject to corruption and to pressures. That was De Veau. On the other hand, we deal with a statute that covers over 100 positions, including a broad range of employees; the statute is an absolute bar to employment permitting no administrative discretion; and no specific evil which applies to each and every position covered by statute is easily recognizable.
The contrast between De Veau and the case at bench can more readily be assessed if we focus on the two state purposes which the majority finds legitimate: (1) to assure good character and (2) to avoid the appearance of untrustworthiness.

*599 Good Character and Integrity

The notion that conviction of a felony constitutes "a disqualifying defect in moral character" which justifies permanent exclusion from an occupation found favor among courts in times past (Hirsch v. City & County of San Francisco (1956) 143 Cal. App.2d 313, 325 [300 P.2d 177]). That notion has long since been discredited. (Perrine v. Municipal Court (1971) 5 Cal.3d 656, 663 [97 Cal. Rptr. 320, 488 P.2d 648]; see Morrison v. State Board of Education (1969) 1 Cal.3d 214, 227-228 [82 Cal. Rptr. 175, 461 P.2d 375].) The present requirement is that at least some reasonable relation between an applicant's qualification and his past criminal conviction be shown.[1] (See Perrine v. Municipal Court, supra, at p. 663.)
We come to Government Code section 1029. What reasonable relationship is there between prior felony conviction showing a lack of good moral character and the total exclusion of an ex-felon from each of the many included positions? I find none. The state's approach is irrational in its overbroad ban. The purpose may well be legitimate for policemen and other truly similar occupations. However, without an extensive showing of job-relatedness, the statute must be deemed grossly over inclusive.

Public Trust and Confidence
Intertwined with the issue of good moral character is that of public trust and confidence. The majority has "no problem" in extending this rationale to any peace officer-related occupation. However, the extension is not as problem free as the majority would believe. The enforcement role of a policeman is at variance with most of the other peace officer-designated positions found in the statute.
*600 There is no logical connection among the many positions covered. The connection, one would expect, would be the power of arrest. Not so. The peace officer does have the power of arrest. (Pen. Code, §§ 830.1, 830.3, subds. (a), (b), (e) and 836.) However, other positions included are given powers of arrest only in very restricted basis. Thus, some have no arrest powers except with regard to escaping prisoners or under such declared emergencies as are necessary to carry out the duties of the job. (Pen. Code, § 830.5.) In fact, few of the positions included have the "broad power of arrest" which we associate with policemen.
How is the public trust and confidence in a law enforcement agency enhanced by the exclusion or inclusion of ex-felons as furniture or agricultural inspectors? The mere status of the statutorily defined peace officer is not rationally related to a matter of public trust because of the over-inclusive (and under-inclusive) nature of the categories. Those who normally do not arrest, as well as those who do arrest, are included. Those who are public officers, as well as those who are not public officers, are included. Unlike the majority, I find a "real problem" in extending the public trust and confidence argument to each and every one of the positions covered by section 1029.
No mystery surrounds extension of the traditional definition of peace officer to such an unrecognizable degree by the Legislature. The Legislature must respond to the interests of various groups. Correctional officers, for example, were granted the status of "peace officers" in order that they may obtain better group insurance benefits. (See Pen. Code, § 830.5, subd. (d).) That is, because peace officers appear to have enjoyed better benefits in times past, many employee groups, even tangentially associated with the role of peace officers, have persuaded the Legislature to include them within the term "peace officer." This may have had the salutory effect of providing some benefit for more groups. It has had a deletorious effect of banning ex-felons from a great many positions which only a most imaginative Legislature could categorize as "peace officers." Such a reason does not suffice in light of this constitutional attack. The statute, I conclude, is unconstitutional on its face.

2. Section 1029 Is Unconstitutional as Applied

Section 1029 is unconstitutional as applied to plaintiff Hetherington.[2] He has been barred from the positions of parole agent I, group supervisor *601 and youth counselor. I note that it is the State Personnel Board which made the final determination that ex-felons are ineligible for these three positions. It is possible that the board's decision merely constitutes an abuse of discretion since the statute does not specifically state which job titles come under the ban. However, for the purpose of this dissent, I assume that the board's interpretation is consistent with the meaning of the statute.
None of the governmental interests mentioned by the majority provides a rational basis for the total exclusion of all ex-felons from these positions. First, ex-felons as a class have not been prohibited from working in the correctional field in the federal system, or in the majority of the states. (See Priestino & Allen, The Parole Officer Aide Program in Ohio: Exemplary Project, Ohio State Univ., Program For the Study of Crime and Delinquency, Monograph No. 42 (1975) at p. 25.) California, by its adoption of section 1029, subdivision (b) has conceded that it can guard against the possibility that a person without good moral character can be hired. By that amendment the statute permits the hiring of a pardoned ex-felon who has demonstrated ability to "assist persons in programs of rehabilitation" and to be employed "as a parole officer of the Department of Corrections." Second, the asserted interest that police officers carry firearms is inapplicable to Youth Authority personnel who are neither required nor allowed to carry firearms. (See Youth Personnel Rehabilitation Service Manual, § 123.3.) The state, of course, has more than adequate screening procedures to assure that the persons hired have none of the debilitating characteristics and all of the affirmative characteristics required of persons in those positions. (See Gov. Code, § 1031; Declaration of Allen Breed, Director of the Cal. Youth Authority.)
The majority decision ignores these real factors. It merely refers to the solicitous attitudes of the courts regarding the character of peace officers who deal with juvenile delinquents. I would agree with the implication that such officers must be exemplary in character in order to "inculcate and foster respect for parental, school and other legal authority." (Johnson v. County of Santa Clara (1973) 31 Cal. App.3d 26, 34 [106 Cal. Rptr. 862].) However, to a youth who has broken the law, an ex-felon, particularly a person like Hetherington, can be exemplary in the most meaningful sense. He can demonstrate to troubled youth that they can succeed in changing their lifestyles and constructively channel their efforts. (See Declaration of Allen Breed, supra, at p. 161.) Plaintiff Hetherington is able to relate to the problems of the Youth Authority client population; he has a sympathetic, yet objective, understanding of *602 the problems of delinquent youth. (See Declaration of Allen Breed, supra, at p. 161; see also, Declaration of plaintiff Hetherington, at p. 170.)
Hetherington, the record shows, has lived an exemplary life for a decade. During that time he has obtained a certificate of rehabilitation, supported his family, and has been gainfully employed. His work record has been outstanding. Importantly, it has been a work performed for the California Youth Authority. That attests to his good moral character and his capacity.
Finally, I note the custodial nature of the Youth Authority positions under discussion. While those positions are given the status of "peace officers" they are essentially restricted to exercising authority over prisoners. (Pen. Code, § 830.5.) Other custodial officers perform comparable work and yet are not designated as peace officers. (Pen. Code, § 831.)

B
Government Code section 1029 fails to meet the compelling state interest test.
As did the majority, I have considered plaintiffs' cause pursuant to the rational basis test. Nonetheless, in my view, the majority applied an erroneous test. It is the strict scrutiny test which is appropriately applied to plaintiffs' attack on section 1029. The reasons are three-fold: First, we deal with a fundamental interest, the right to gainful employment; second, we deal with a suspect classification, that of ex-felons; and third, the state lacks compelling interest in the total exclusion of ex-felons from all section 1029 defined peace officer-related positions.

1. The Fundamental Right to Employment

The California Supreme Court has characterized employment as a fundamental interest under the California Constitution.
The majority reject plaintiffs' fundamental interest assertion on the authority of D'Amico v. Board of Medical Examiners, supra, 11 Cal.3d 1. However, the D'Amico court dealt with the issue of whether the strict scrutiny test ought to apply to the licensing of practitioners in the healing *603 arts. The Supreme Court reasoned that the rational basis test should apply. Its explanation of the rational basis test, as applied in D'Amico and the strict scrutiny test as applied in Sail'er Inn, Inc. v. Kirby (1971) 5 Cal.3d 1 [95 Cal. Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]), brings the case at bench squarely within the strict scrutiny rationale. Three reasons persuaded the court that the healing arts profession should be removed from the fundamental interest found in employment. First, D'Amico did not deal with a "suspect classification." As I discuss later, we do deal with such a classification in considering ex-felons. Second, D'Amico did not deal with "common occupations." Many of the positions included within section 1029 are of that category. Third, the court reasoned that the case of San Antonio School District v. Rodriquez (1973) 411 U.S. 1, 33 [36 L.Ed.2d 16, 42-43, 93 S.Ct. 1278], restricted a "fundamental interest" to those matters "explicitly or implicitly guaranteed by the Constitution." There, the Supreme Court suggested that only a total deprivation of a state given right (education) would violate the United States Constitution. In D'Amico there was no deprivation of such a right. In the case at bench, we do have an absolute ban and thus we deal with a constitutionally guaranteed right. Further, in no way did the California Supreme Court withdraw from its notion that an interest may be "independently viable" under the state Constitution. (Serrano v. Priest (1976) 18 Cal.3d 728, 765 [135 Cal. Rptr. 345, 557 P.2d 929].) Here, such an independently viable interest is present.
In the context of section 1029 the reasoning of Sail'er Inn is intact. The court stated: "We have held that the state may not arbitrarily foreclose any person's right to pursue an otherwise lawful occupation.... The right to work and the concomitant opportunity to achieve economic security and stability are essential to the pursuit of life, liberty and happiness." (Sail'er Inn, Inc. v. Kirby, 5 Cal.3d at p. 17.) Since a fundamental right was at stake in Sail'er Inn the court added: "[t]he strict scrutiny standard of review ... [is applicable] because the statute limits the fundamental right of one class of persons to pursue a lawful profession...." (Sail'er Inn, Inc. v. Kirby, supra, at p. 17.)
As in Sail'er Inn we deal with a right to employment respecting some common occupations. We deal with a group which historically has been discriminated against. Finally, we deal with an interest which is "implicitly" guaranteed by the Constitution. Thus, with respect to the applicable constitutional test, it is Sail'er Inn and not D'Amico which applies.

*604 2. The Class of Ex-felons Constitutes a Suspect Classification

The majority rule that ex-felons do not fall within any suspect classification. Although the United States Supreme Court may have adopted "strict and rigid definitions of fundamental rights and suspect classes" (see Massachusetts Bd. of Retirement v. Murgia (1976) 427 U.S. 307 [49 L.Ed.2d 520, 96 S.Ct. 2562]), the California Supreme Court, in interpreting the California Constitution, has not been so constrained. (See Serrano v. Priest, supra, 18 Cal.3d 728; Sail'er Inn, Inc. v. Kirby, supra, 5 Cal.3d 1; see also, Cal. Const. art. I, § 24, as amended in 1974 ("Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution").)
The California Supreme Court has specified two factors in determining whether a class is suspect. They are (1) immutable traits tied to outdated social stereotypes and (2) the stigma of inferiority and second class citizenship. (Sail'er Inn, Inc., v. Kirby, supra, at pp. 18-20.) These factors apply to ex-felons.
The status of ex-felon is immutable. It is true that prior felony conviction is not a status created by the accident of birth as are sex or race. (See Sail'er Inn, supra, at p. 18 and cases cited.) Nonetheless, it is more "immutable" a trait than other suspect classifications, alienage (see Purdy & Fitzpatrick v. State of California (1969) 71 Cal.2d 566, 578-579 [79 Cal. Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]) or poverty (see Serrano v. Priest (1971) 5 Cal.3d 584, 604 [96 Cal. Rptr. 601, 487 P.2d 1241]; In re Antazo (1970) 3 Cal.3d 100, 112 [89 Cal. Rptr. 255, 473 P.2d 999].)
An alien is a person who travels or lives in this country but is not a citizen. Alienage can be terminated by acquiring citizenship. In contrast, the classification of prior felony conviction, once imposed, becomes far more immutable. Even after a full pardon, the criminal record persists (Pen. Code, § 4852.17), and does so even if the pertinent penal statute has been abolished (see Pen. Code, § 11100 et seq.). Poverty, of course, can be changed by acquiring wealth.
The crucial distinction is that a whole class is "relegated to an inferior legal status without regard to the capabilities or characteristics of its individual members." (Sail'er Inn, Inc., supra, at p. 18.) Those "characteristic[s] frequently bear[] no relation to ability to perform or contribute to society.... Where the relation between characteristic and evil to be prevented is so tenuous, courts must look closely at classifications based *605 on that characteristic lest outdated social stereotypes result in invidious laws or practices." (Id., at p. 18.)
There are over 120,000 ex-felons in California who continue to face severe unemployment problems. The national unemployment rate for ex-felons is traditionally at least three times the rate for the general public. (See Chaneles, The Open Prison, Monograph (U.S. Dept. of Labor); see also, Miller, The Closed Door: The Effects of a Criminal Record on Employment with State and Local Public Agencies (1972).) Removing several hundred thousand job possibilities manifestly has a deleterious effect.
The persistence of stereotypical notions in the denial of any opportunity to compete for statutorily defined peace officer-related jobs is especially debilitating for ex-felons due to the stigma attached to their status. One commentator has noted that "convicted felons have for centuries faced purposeful unequal treatment." (Comment, The Revolving Door: The Effect of Employment Discrimination Against Ex-Prisoners, 26 Hastings L.J. 1403, 1420.) They are branded as second-class citizens due to civil disability statutes which deny them the right to vote, to serve as a juror, or to hold public office. (Elec. Code, § 701; see Otsuka v. Hite (1966) 64 Cal.2d 596 [51 Cal. Rptr. 284, 414 P.2d 412]; Code Civ. Proc., § 199; Gov. Code, § 1021; see also, Cal. Const., art. XX, § 11.) The stigmatization experienced by ex-felons as a class is compounded by the fact that "the great majority of prisoners are poor, lower class, members of minority groups, and uneducated." (Comment: The Revolving Door: The Effect of Employment Discrimination Against Ex-Prisoners, supra, at p. 1421.) Minorities account for over 50 percent of all felons in California state prisons even though they constitute only 26 percent of the total population of the State of California. (See State of Cal., Health and Welfare Agency, Dept. of Corrections, Characteristics of Felon Population in Cal. State Prisons by Institution (June 30, 1975) dated Aug. 15, 1976; U.S. Dept. of Commerce, Bureau of the Census 1970 Census Rep.  Detailed Characteristics  Cal. Section 1, tables 139 and 140.)
The majority reject any claim of disproportionate impact, stating that a "statutorily significant percentage correlation or relationship" must first be established. The statistics show that the ratio of minority felons to the minority population is three times as great as the ratio of nonminority *606 felons to the nonminority population.[3] An absolute ban against ex-felons reduces the employment opportunities for the minority community resulting in a disproportionate economic and social impact. (See Boren v. Department of Employment Dev. (1976) 59 Cal. App.3d 250, 257 [130 Cal. Rptr. 683].) Courts are concerned with the practical impact of a statute, not its neutral language. The rejection of plaintiffs' claims on the ground that the statistics failed to reach a "statutorily significant" level was improper.[4]
In summary, the factors identified by the court in Sail'er Inn apply to ex-felons. The "immutable" status of prior felony conviction, which persists for the rest of a person's life, is the result of outdated social stereotyping based on a "disqualifying defect in moral character." The class is also stigmatized by society and assigned to a position of inferiority and second class citizenship. This stigmatization is compounded by the minority and indigent status of most ex-felons. I would hold that the class of ex-felons constitutes a suspect classification in the context of equal employment opportunities.

3. The State Has No Compelling Interest

I proceed to the final step under an equal protection analysis. "Under this standard the presumption of constitutionality normally attaching to state legislative classifications falls away, and the state must shoulder the burden of establishing that the classification in question is necessary to achieve a compelling state interest." (Serrano v. Priest, supra, 18 Cal.3d at p. 768. See also, Sail'er Inn, Inc. v. Kirby, supra, 5 Cal.3d at pp. 16-17; Westbrook v. Mihaly (1970) 2 Cal.3d 765, 785 [87 Cal. Rptr. 839, 471 P.2d 487].)
*607 Penal Code section 830 et seq. define "peace officer" but not by specific occupational titles. Government Code section 1029, of course, incorporates those definitions. A number of state interests are advanced  the good moral character of peace officers, public trust and confidence in law enforcement officials and the carrying of firearms. We have seen that these interests cannot and do not apply to each affected position.
Even if a compelling interest were established, defendants have not shown that the automatic ex-felon bar is necessary to further the state's purpose. That is, that it is the least obtrusive means to meet that interest. (See Dunn v. Blumstein (1972) 405 U.S. 330, 342-343 [31 L.Ed.2d 274, 284-285, 92 S.Ct. 995].) The state, in my view, has a viable screening alternative through the individualized consideration of ex-felon applications for those positions deemed particularly important to the public interest. (See Gov. Code, § 1031, subd. (a).)
I would reverse and remand for a full evidentiary hearing. The constitutional issues posed demand no less. Nonetheless, even this incomplete record convinces me of the unconstitutionality of Government Code section 1029.
A petition for a rehearing was denied August 1, 1978, and appellants' petition for a hearing by the Supreme Court was denied November 2, 1978. Bird, C.J., did not participate therein. Kaus, J.,[*] participated therein. Mosk, J., and Newman, J., were of the opinion that the petition should be granted.
NOTES
[1] Hetherington had recently worked for the Youth Authority under the Work Incentive Program (WIN) and under the Comprehensive Employment and Training Act as a trainee group supervisor and parole aide. Various officials had recommended he receive a pardon from the Governor. The Superior Court of Sacramento County had granted him a certificate of rehabilitation in March 1974 and the California Supreme Court had recommended to the Governor his pardon be granted. At the time of this lawsuit the Governor had not acted, but plaintiff Hetherington was granted a pardon by the Governor after this appeal was filed. Therefore the issues raised in the amended complaint relating to delays and failure of the Governor to act on the pardon have expressly been excluded by plaintiff Hetherington from this appeal. It was further alleged that Hetherington is a resident of the County of Sacramento who was assessed for and, within the year immediately preceding the filing of the complaint, did pay a tax to the County and to the State of California; and that the State Personnel Board has expended and will expend public time and funds enforcing Government Code section 1029.
[1] Legislative enactments have followed a parallel course. Thus, by the 1971 amendment to Government Code section 1031 the Legislature eliminated consideration of "good moral character," standing alone, as a prerequisite to employment in those occupations having the power and authority of peace officers. Rather, the determination of moral character is now based on a "thorough background investigation." Government Code section 1029 includes within its prohibition both the legally declared peace officers (Pen. Code, § 830 et seq.) and those who have the "power and duties of peace officer," but who are not statutorily defined as peace officers.

Another recent change in the law is found in Business and Professions Code section 480 et seq. Those sections, dealing with denial, suspension and revocation of licenses, were amended in 1964 to eliminate the "good moral character" phrases as to a prerequisite to qualifying for regulated licenses. Section 480, subdivision (b) specifically states that a license may not be refused "solely on the basis that he [the applicant] has been convicted of a crime if he has obtained a certificate of rehabilitation."
[2] The absence of an evidentiary hearing is particularly serious in an analysis of a statute as applied. For purposes of this section I assume the truth of plaintiffs' factual allegations.
[3] The 1970 Census report shows a total population of 19,957,304 for the State of California. The minority figure is 5,202,747. Of the total felon population in California correctional institutions and on parole for which a racial analysis is possible more than 50 percent are minority. A comparison of the racial composition of the approximately 120,000 ex-felon population to the total population of the state results in a 3-1 ratio.
[4] Again we suffer from a limited record. Necessary data was under the control of defendants and was properly requested by interrogatory. Plaintiffs' interrogatory described peace officer-related positions and requested "the number of individuals presently employed in each position or classification who are (a) Black; (b) Spanish-surnamed; (c) Asian-American; or (d) American Indian." After the motion for summary judgment on the pleadings had been filed, the parties agreed by stipulation to permit the postponement of answers. Plaintiffs may have been able to prove a broader discriminatory impact if defendants' responses showed that minorities as a whole were disproportionately excluded from peace officer-related positions. Such discriminatory practices in general could then be used to show racial discrimination through the total exclusion of ex-felons who are disproportionately minorities.
[*] Assigned by Acting Chairperson of the Judicial Council.