Opinion
 

 CHRISTIAN, J.
 

 Olivia N. appeals from a judgment of dismissal which the court rendered before the commencement of a scheduled jury trial in her action against respondents National Broadcasting Co., Inc. and the Chronicle Broadcasting Company.
 

 Appellant’s complaint sought damages from respondents for injuries allegedly inflicted upon her by certain juveniles who were acting upon the stimulus of observing a scene of brutality which had been broadcast in a television drama entitled “Bom Innocent.” The subject matter of the television film was the harmful effect of a state-run home upon an adolescent girl who had become a ward of the state. In one scene of the film, the young girl enters the community bathroom of the facility to take a shower. She is then shown taking off her clothes and stepping into the shower, where she bathes for a few moments. Suddenly, the water stops and a look of fear comes across her face. Four adolescent girls are standing across from her in the shower room. One of the girls is carrying a “plumber’s helper,” waving it suggestively by her side. The four girls violently attack the younger girl, wrestling her to the floor. The young girl is shown naked from the waist up, struggling as the older girls force her legs apart. Then, the television film shows the girl with the plumber’s helper making intense thrusting motions with the handle of the plunger until one of the four says, “That’s enough.” The young girl is left sobbing and naked on the floor.
 

 It is alleged that appellant, aged nine, was attacked by minors at a beach in San Francisco. It is alleged that the minors attacked appellant
 
 *387
 
 and another minor girl, and forcibly and against her will, “artificially raped” appellant with a bottle. The complaint alleges that the assailants had seen the “artificial rape” scene in “Born Innocent” and that the scene “caused them to decide to do a similar act to a minor girl.”
 

 When the case came on for jury trial, respondents moved, before impanelment of a jury, that the court first determine for itself the “constitutional fact” of “incitement”—i.e., whether the film, “Born Innocent,” was a vehicle for “inciting” violent and depraved conduct such as the crimes of the juveniles in the present case, of which appellant was the victim.
 

 The trial judge viewed the entire film, made a finding that it did not advocate or encourage violent and depraved acts and thus did not constitute an “incitement,” and rendered judgment for respondents without impaneling a jury. The present appeal followed.
 

 Analysis of this appeal commences with recognition of the overriding constitutional principle that material communicated by the public media, including fictional material such as the television drama here at issue, is generally to be accorded protection under the First Amendment to the Constitution of the United States.
 
 (Joseph Burstyn, Inc.
 
 v.
 
 Wilson
 
 (1952) 343 U.S. 495, 501 [96 L.Ed. 1098, 1105, 72 S.Ct. 777];
 
 Winters
 
 v.
 
 New York
 
 (1948) 333 U.S. 507, 510 [92 L.Ed. 840, 847, 68 S.Ct. 665].) In
 
 Joseph Burstyn, Inc.
 
 v.
 
 Wilson, supra,
 
 at page 501 [96 L.Ed. at pp. 1105-1106], the court stated: “It cannot be doubted that motion pictures are a significant medium for the communication of ideas. They may affect public attitudes and behavior in a variety of ways, ranging from direct espousal of a political or social doctrine to the subtle shaping of thought which characterizes all artistic expression. The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform. As was said in
 
 Winters
 
 v.
 
 New York,
 
 333 U.S. 507, 510 (1948): ‘The line between the informing and the entertaining is too elusive for the protection of that basic right [a free press]. Everyone is familiar with instances of propaganda through fiction. What is one man’s amusement, teaches another’s doctrine.’ ” (Fn. omitted; see also
 
 Kingsley Pictures Corp.
 
 v.
 
 Regents
 
 (1959) 360 U.S. 684, 690 [3 L.Ed.2d 1512, 1517, 79 S.Ct. 1362].) “There is no doubt that entertainment,- as well as news, enjoys First Amendment protection.”
 
 (Zacchini
 
 v.
 
 Scripps-Howard Broadcasting Co.
 
 (1977) 433 U.S. 562 [53 L.Ed.2d 965,97 S.Ct. 2849]) As the court stated in
 
 Rosenbloom
 
 v.
 
 Metromedia
 
 (1971) 403 U.S. 29, 41 [29 L.Ed.2d 296, 310,
 

 
 *388
 
 91 S.Ct. 1811]: “The guarantees for speech and press are not the preserve of political expression or comment upon public alfairs.’
 
 Time, Inc.
 
 v.
 
 Hill,
 
 385 U.S. 374, 388 (1967). ‘Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.’
 
 Thornhill
 
 v.
 
 Alabama,
 
 310 U.S. 88, 102(1940).”
 

 Specifically, television broadcasting is a medium which is entitled to First Amendment protection. (See
 
 Red Lion Broadcasting Co.
 
 v.
 
 FCC
 
 (1969) 395 U.S. 367, 386 [23 L.Ed.2d 371, 386-387, 89 S.Ct. 1794];
 
 Writers Guild of America, West, Inc.
 
 v.
 
 F.C.C.
 
 (C.D.Cal. 1976) 423 F.Supp. 1064, 1147.) Thus, expression by means of television dramatization is included within the free speech and free press guarantees of the First and Fourteenth Amendments. Where a television broadcast does not involve unprotected speech, the constitutional protection for free speech limits the state’s power to award damages in a negligence action based upon the broadcast. (See
 
 New York Timés Co.
 
 v.
 
 Sullivan
 
 (1964) 376 U.S. 254, 265, 277-278 [11 L.Ed.2d 686, 697, 704-705, 84 S.Ct. 710, 95 A.L.R.2d 1412].)
 

 The freedom of speech guaranteed by the First Amendment is not, of course, absolute. Certain narrowly limited classes of speech may be prevented or punished by the state consistent with the principles of the First Amendment. Speech which is obscene is not protected by the First Amendment.
 
 (Miller
 
 v.
 
 California
 
 (19.73) 413 U.S. 15, 23, 34-35 [37 L.Ed.2d 419, 430, 436-437, 93 S.Ct. 2607], rehg. den., 414 U.S. 881 [38 L.Ed.2d 128, 94 S.Ct. 26].) “Bom Innocent” is not constitutionally obscene. “[L]ibel, slander, misrepresentation, obscenity, perjury, false advertising, solicitation of crime, complicity by encouragement, conspiracy, and the like” are also outside the scope of constitutional protection.
 
 (Konigsberg
 
 v.
 
 State Bar
 
 (1961) 366 U.S. 36, 49, fn. 10 [6 L.Ed.2d 105, 116, 81 S.Ct. 997].) Generally, libel and slander are considered outside the scope of First Amendment protection because “there is no constitutional value in
 
 false
 
 statements of
 
 fact.” (Gertz
 
 v.
 
 Robert Welch, Inc.
 
 (1974) 418 U.S. 323, 340 [41 L.Ed.2d 789, 805, 94 S.Ct. 2997]; italics added.) However, the free speech guarantee even requires that some protection be given to falsehood, in certain circumstances, “in order to protect speech that matters.”
 
 (Gertz
 
 v.
 
 Robert Welch, Inc., supra,
 
 at p. 341 [41 L.Ed.2d at p. 806].) The constitutional freedom for speech and press also does not immunize “speech or writing used as an integral part of conduct in violation of a valid criminal statute.”
 
 (Giboney
 
 v.
 
 Empire
 
 
 *389
 

 Storage Co.
 
 (1949) 336 U.S. 490, 498 [93 L.Ed. 834, 841, 69 S.Ct 684].) Additionally, speech which is directed to inciting or producing imminent lawless action, and which is likely to incite or produce such action, is also outside the scope of First Amendment protection. (See
 
 Brandenburg
 
 v.
 
 Ohio
 
 (1969) 395 U.S. 444, 447-448 [23 L.Ed.2d 430, 433-434, 89 S.Ct. 1827].)
 

 The question whether the television film, “Bom Innocent,” falls within any category of unprotected speech may, where the facts are not disputed, constitute a question of law.
 
 (L.A. Teachers Union
 
 v.
 
 L.A. City Bd. of Ed.
 
 (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827];
 
 Johnson
 
 v.
 
 County of Santa Clara
 
 (1973) 31 Cal.App.3d 26, 32 [106 Cal.Rptr. 862].) In the present case, the film itself was available and the court might perhaps have determined from viewing it in connection with a motion for summary judgment, that the film did not advocate or encourage violent and depraved acts and thus, did not constitute an “incitement.” (See
 
 Paris Adult Theatre I
 
 v.
 
 Slaton
 
 (1973) 413 U.S. 49, 56 [37 L.Ed.2d 446, 456, 93 S.Ct. 2628], rehg. den., 414 U.S. 881 [38 L.Ed.2d 128, 94 S.Ct. 27];
 
 Jenkins
 
 v.
 
 Georgia
 
 (1974) 418 U.S. 153, 159-160, 161 [41 L.Ed.2d 642, 649-651, 94 S.Ct. 2750];
 
 Chaplinsky
 
 v.
 
 New Hampshire
 
 (1942) 315 U.S. 568, 574 [86 L.Ed. 1031, 1036, 62 S.Ct. 766].) But a motion for summary judgment had earlier been denied by another judge. No such motion was pending when the trial judge rendered the decision now under review.
 

 Trial by jury had been demanded by appellant. That demand put into operation her right, under California Constitution, article I, section 7, to have all fact issues in the case determined by a juiy. The trial court’s action in viewing the film, and thereupon making fact findings and rendering judgment for respondents, was a violation of appellant’s constitutional right to trial by jury. It was both reversible error and an act in excess of jurisdiction. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 73, p. 2908.)
 

 Here, it is appropriate to acknowledge that, if the cause had proceeded properly to trial before a jury and a verdict awarding damages to appellant had been the result, it would have been the responsibility of the trial court, or perhaps of this court on appeal, to determine upon a reevaluation of the evidence whether the jury’s fact determination could be sustained against a First Amendment challenge to the jury’s determination of a “ ‘constitutional fact.’ ”
 
 (Rosenbloom
 
 v.
 
 Metromedia, supra,
 
 403 U.S. 29, 54 [29 L.Ed.2d 296, 318].) But the case is not presently ripe
 
 *390
 
 for such a determination, appellant having been deprived of her constitutional right to present before a jury evidence which she contends will show that, despite First Amendment protections, the showing of the film, “Born Innocent,” resulted in actionable injuries. (Cf.
 
 Weirum
 
 v.
 
 RKO General, Inc.
 
 (1975) 15 Cal.3d 40 [123 Cal.Rptr. 468, 539 P.2d 36].)
 

 The judgment is reversed with directions to impanel a jury and proceed to trial of the action.
 

 Rattigan, Acting P. J., and Emerson, J.,* concurred.
 

 A petition for a rehearing was denied November 23, 1977, and respondents’ petition for a hearing by the Supreme Court was denied January 19, 1978. Tobriner, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.