## 37072. WALT DISNEY PRODUCTIONS, INC. et al. v. SHANNON et al.

MARSHALL, Justice.

In this rather novel lawsuit, a child plaintiff is seeking to subject to tort liability various companies responsible for the broadcast of a children's television program. The plaintiff's complaint is that statements made during the course of the program constituted an invitation, accepted by the plaintiff, to do something posing a foreseeable risk of injury to children of tender years.

The facts giving rise to this case occurred on February 28, 1978, when plaintiff Craig Shannon was watching the "Mickey Mouse Club" on television. It was stated during the course of the program: "Our special feature on today's show is all about the magic you can create with sound effects." One of the participants in this feature proceeded to show the audience how to reproduce the sound of a tire coming off an automobile by putting a BB pellet inside a "large, round balloon," filling the balloon with air, and rotating the BB inside the balloon. Craig, who was 11 years old, undertook to repeat what he had seen on television. He put a piece of lead almost twice the size of a BB into a "large, skinny balloon." He blew up the balloon and the balloon burst, impelling the lead into Craig's eye and partially blinding him. He then brought this tort suit against the producer, syndicator, and broadcaster of the Mickey Mouse Club Show: Walt Disney Productions, Inc., SFM Media Services, and Turner Communications, Inc., respectively.

The trial judge granted the defendants' motions for summary judgment under general tort principles and on First Amendment grounds. The Court of Appeals reversed, refusing to hold as a matter of law that the defendants cannot be held liable in tort for the plaintiff's injuries. We granted certiorari, because this case appears to raise important questions of first impression in the areas of both tort and constitutional law.

1. The defendants argue that this suit is barred by the First Amendment; and, in so arguing, they rely on New York Times v. Sullivan, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964) and two cases decided pursuant to its holding: Time, Inc. v. Hill, 385 U. S. 374 (87 SC 534, 17 LE2d 456) (1967) and Rosenbloom v. Metromedia, Inc., 403 U. S. 29 (91 SC 1811, 29 LE2d 296) (1971).

The landmark decision of New York Times held that before liability can be imposed in a state libel action brought by a public official against critics of his official conduct, it must be proved that the allegedly defamatory falsehood was uttered with knowledge that it was false or reckless disregard as to whether or not it was true. The

New York Times standard was subsequently held applicable to "public figures." Curtis Publishing Co. v. Butts, 388 U. S. 130 (87 SC 1975, 18 LE2d 1094) (1967).

It is true that Rosenbloom did hold that the knowing-or-reckless-falsity standard of New York Times applies to a libel action brought by a private individual for a defamatory falsehood uttered in a news broadcast concerning an event of public or general interest. However, Rosenbloom was effectively overruled in Gertz v. Robert Welch, Inc., 418 U. S. 323 (94 SC 2997, 41 LE2d 789) (1974). And Hill does extend the rule of New York Times to an action under a state privacy statute for false reports of a matter of public interest. However, as pointed out in Zacchini v. Scripps-Howard Broadcasting Co., 433 U. S. 562 (97 SC 2849, 53 LE2d 965) (1977), Hill is a case involving the law of privacy and is to be limited thereto.

As was stated in the New York Times decision itself, that case must be considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open . . ." 376 U. S. at page 270. There is nothing in the content of what was broadcast in this television program that would bring it within the scope of New York Times. Therefore, we hold that New York Times and its progeny are inapposite here.

2. However, the plaintiff in this case is seeking to hold the defendants liable in tort for statements communicated to the plaintiff through the medium of television. This highlights the fact that this case does involve questions concerning freedom of speech or expression. Therefore, before the defendants can be subjected to liability for the statements uttered during this program, it must be determined whether these statements constitute protected speech within the meaning of the First Amendment.

In determining whether a given form of expression is entitled to protection under the First Amendment, there have evolved various defined categories of speech or communicative conduct which have been held not to be entitled to constitutional protection. As stated in the seminal decision of Chaplinsky v. New Hampshire, 315 U. S. 568, 571 (62 SC 766, 86 LE 1031) (1942), "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of

such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. [Footnotes omitted.]" An utterance can be suppressed or penalized[1] on the ground that it tends to incite an immediate breach of peace, if "the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent." Schenck v. United States, 249 U. S. 47, 52 (39 SC 247, 63 LE 470) (1919).[2]

We conclude that the Schenck formulation of the "clear and present danger" doctrine provides the appropriate analytical framework for resolving this case. The substantive evil which the tort law seeks to redress is the infliction of personal injury. For reasons which follow, we hold that the defendants' motions for summary judgment were correctly granted by the trial judge, because it cannot be said that the statements uttered during the course of this television program gave rise to a clear and present danger of personal injury to the plaintiff.

3. Here, a child plaintiff is seeking to hold adult defendants liable on the ground that they invited him to do something posing a foreseeable risk of injury. The only arguable precedent for an action such as this is found in a line of so-called "pied piper" cases.[3] "And when children are in the vicinity, much is necessarily to be expected of them which would not be looked for on the part of an adult. It may be anticipated that a child will dash into the street in the path of a car,

---

[1] For First Amendment purposes, whether an utterance is suppressed under criminal law or penalized under tort law makes no difference. As was stated in New York Times v. Sullivan, 376 U. S. 254, 277 (1964), supra, "What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law of libel."

[2] In the language of Brandenburg v. Ohio, 395 U. S. 444, 447 (89 SC 1827, 23 LE2d 430) (1969), the utterance is not protected if it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."

In our opinion, Weirum v. RKO General, Inc., 123 Cal. Rptr. 468 (15 Cal. App. 3d 40) (1975), as well as Olivia, N. v. NBC, Inc. 141 Cal. Rptr. 511 (74 Cal. App. 3d 383) (1977), cert den. sub nom. NBC, Inc. v. Niemi, 435 U. S. 1000 (1978), constitute authority for the proposition that a tort defendant can be held liable if the defendant incited, within the meaning of Brandenburg, a third party to commit a crime against the plaintiff. There is nothing in what the plaintiff was allegedly invited to do here that was "imminently lawless." Therefore, even assuming the correctness of the holdings in RKO and Olivia N. under the facts present there, we hold that these decisions are inapposite under the facts here.

[3] This dearth of authority can be attributed to the existence of the doctrines of the assumption of risk and contributory negligence, which would generally pose an

or meddle with a turntable. It may be clear negligence to entrust him with a gun, or to allow him to drive an automobile, or to throw candy where a crowd of boys will scramble for it. There have been a number of 'pied piper' cases, in which street vendors of ice cream, and the like, which attract children into the street, have been held liable for failure to protect them against traffic." (Footnotes omitted.) Prosser, Law of Torts 172, § 33 (4th Ed. 1971).

As we read the pied piper cases, they contain two basic elements: (1) there must be an express or implied invitation extended to the child to do something posing a foreseeable risk of injury; and (2) the defendant must be chargeable with maintaining or providing the child with the instrumentality causing the injury. In this case, the first element is arguably present, but the second element is undisputably absent.

We can, nonetheless, envision situations in which an adult could be held liable in tort solely on the ground that statements uttered by him constituted an invitation to a child to do something causing the child injury. However, under First Amendment jurisprudence, the adult should not be subjected to liability under such a theory unless what the adult invited the child to do presented a clear and present danger that injury would in fact result. Although it can be said that what the defendants allegedly invited the child to do in this case posed a foreseeable risk of injury, it cannot be said that it posed a clear and present danger of injury.[4]

4. Thus, although we conclude in Division 1, supra, that the New York Times line of decisions is not applicable here as such, we do hold that this case is governed by a constitutionally mandated standard of care that is essentially the same as the New York Times "limited immunity" rule. Therefore, we agree with the trial judge that this suit is barred by the First Amendment. To hold otherwise would, as the saying goes, open the Pandora's box; and it would, in our opinion,

---

insurmountable barrier to recovery under such a theory of liability. Code § 105-603. E.g., *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665 (88 SE2d 6) (1955); *Wade v. Roberts,* 118 Ga. App. 284 (163 SE2d 343) (1968); *Roberts v. Bradley,* 114 Ga. App. 262 (150 SE2d 720) (1966). However, whether contributory negligence or assumption of risk on the part of a child bars recovery is peculiarly a question for the jury. Code § 105-204. E.g., *Heath v. Charleston &c. R. Co.,* 218 Ga. 786 (130 SE2d 712) (1963); *Vickers v. Atlanta & W. P. R. Co.,* 64 Ga. 306 (1879); *Jackson v. Young,* 125 Ga. App. 342 (187 SE2d 564) (1972); *Beck v. Standard Cotton Mills,* 1 Ga. App. 278 (57 SE 998) (1907).

[4] In this connection, it is relevant that the evidence shows that of an estimated 16 million children watching this program, only the plaintiff in this case reported an injury.

have a seriously chilling effect on the flow of protected speech through society's mediums of communication.

*Judgment reversed. All the Justices concur, except Jordan, C. J., who concurs in the judgment only. Smith, J., disqualified.*

DECIDED APRIL 8, 1981.

*Ellis G. Arnall, Cleburne E. Gregory, Jr., Earnest H. DeLong, Jr.,* for appellants.

*Savell, Williams, Cox & Angel, Edward L. Savell,* for appellees.