553 So.2d 163 (1989)
Michael SAKON, Etc., et al., Plaintiffs-Appellants,
v.
PEPSICO, INC., Etc., Defendant-Appellee.
No. 73258.
Supreme Court of Florida.
November 30, 1989.
*164 Michael M. O'Brien and James R. Hooper of O'Brien and Hooper, P.A., Orlando, for plaintiffs-appellants.
Jennings L. Hurt, III and Peter J. Zinaich of Rissman, Weisberg, Barrett & Hurt, P.A., Orlando, for defendant-appellee.
PER CURIAM.
We have jurisdiction under article V, section 3(b)(6) of the Florida Constitution to answer the following certified question of law from the United States Court of Appeals for the Eleventh Circuit:
Whether the law of the State of Florida recognizes a duty owed by a television advertiser to its targeted audience of young viewers when that advertiser has broadcast, without adequate warnings, a commercial depicting a dangerous activity in a manner likely to induce a young viewer to imitate the activity.
Sakon v. Pepsico, Inc., No. 88-3207, unpublished slip op. at 5 (11th Cir. Oct. 27, 1988).
This case originated in the state courts of Florida but was transferred on diversity jurisdiction to the United States District Court for the Middle District of Florida. The federal district court granted a motion to dismiss with prejudice which was appealed. We accept the Eleventh Circuit's statement of alleged facts:
Defendant-appellee PepsiCo, Inc. caused to be broadcast a commercial over network television to advertise its Mountain Dew soda. The use of the commercial was solely for the pecuniary gain of PepsiCo, Inc. The commercial portrayed young people riding their bicycles down a path and up a ramp, placed on an embankment over water, and landing their bicycles safely in the water ("Lake Jumping"), to the delight and encouragement of onlooking peers. PepsiCo, Inc. caused the commercial to be broadcast during times of the day, with upbeat music, and using young actors, all in an effort to attract and influence young people. PepsiCo, Inc. knew or should have known that young people would imitate the stunt. The commercial contained no warning that viewers should not attempt the stunt.
After watching the commercial, plaintiff-appellant Sakon, then a fourteen year-old boy, tried to perform the stunt by riding his bicycle over a ramp built on an embankment some ten to twelve feet above the water. The commercial induced Sakon to attempt the stunt. The water in the creek was only three feet deep. Sakon came over the handlebars and landed head first in the creek, breaking his neck in the fall.
Sakon, slip op. at 3-4.
Before addressing the certified question, it is necessary to address certain points raised by appellee, Pepsico, Inc. Appellee points out that the federal district court also dismissed the complaint on the ground that the cause of action was barred by the free speech clause of the first amendment to the United States Constitution. In appellee's view, the advertisement at issue is fully protected as an exercise of free speech and no liability may be found unless the advertisement falls into one or more of the seven recognized exceptions: (1) obscene material, Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 *165 (1973); (2) fighting words, Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); (3) defamation, Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); (4) invasion of privacy, see Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); (5) disruption of the classroom, see Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); (6) incitement of imminent lawless activity, Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); and (7) solicitation of illegal activity, Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). Appellee argues there is no distinction for first amendment purposes between commercial speech, as here, and other protected forms of speech. In appellee's view, all material broadcast by television is subject to undifferentiated protection as free speech, subject only to the seven exceptions noted above. For the same reasons, appellee urges that this Court should not recognize a cause of action based on an advertisement because to do so will enmesh the courts in a fruitless examination of the content of all television broadcasts, commercial and noncommercial. In support, appellee cites cases where, on the basis of the first amendment, the courts have prohibited liability: Zamora v. Columbia Broadcasting Sys., 480 F. Supp. 199 (S.D. Fla. 1979); Olivia N. v. National Broadcasting Co., 126 Cal. App.3d 488, 178 Cal. Rptr. 888 (Ct.App.), cert. denied, 458 U.S. 1108, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982); Walt Disney Prods. Inc. v. Shannon, 247 Ga. 402, 276 S.E.2d 580 (1981); and DeFilippo v. National Broadcasting Co., 446 A.2d 1036 (R.I. 1982).[1] Based on the preceding arguments, appellee concludes that this Court should decline to answer the certified question because, in view of the first amendment protection of free speech, the answer to the certified question would not be dispositive of the case.
Appellee's positions concerning the first amendment protection of commercial speech and the inability of courts to distinguish between commercial and noncommercial speech are contrary to controlling case law. Until recently, commercial speech was entirely unprotected by the free speech clause and "business advertising that [did] no more than solicit a commercial transaction [could] be regulated by government on the same terms as any other aspect of the marketplace." Jackson & Jeffries, Commercial Speech: Economic Due Process And The First Amendment, 65 Va.L.Rev. 1, 5 (1979). Recently, however, the Supreme Court has recognized that the first amendment provides a degree of protection to commercial speech. Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Contrary to appellee's positions, commercial speech, such as that at issue here, is clearly differentiated from noncommercial speech and is afforded only a limited measure of protection. The Supreme Court summarized the relevant law in Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 455-56, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978):
Expression concerning purely commercial transactions has come within the ambit of the Amendment's protection only recently. In rejecting the notion that such speech "is wholly outside the protection of the First Amendment," we were careful not to hold "that it is wholly undifferentiable from other forms" of speech. We have not discarded the "common-sense" distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech. To require parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of *166 protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression.
(Citations and footnote omitted.) Accord Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); Friedman v. Rogers, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); First Nat'l Bank v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); Bates v. State Bar, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Contrary to appellee's position, television programs, whether news or entertainment, are easily differentiated using common sense from advertisements which merely solicit a commercial transaction or state information relevant thereto.
In urging that we decline to answer the certified question and ground our answer on the first amendment, appellee has overstated the degree of protection afforded commercial speech. We have addressed appellee's absolutist view of the first amendment in order to reach the certified question of state law. In summary, then, we are not persuaded that the first amendment prohibits the states from recognizing a cause of action for false, deceptive, or misleading advertising.
We nevertheless conclude that under the facts alleged in this case, Pepsico cannot be held legally liable. Pepsico's commercial has done nothing more than portray young people engaged in a sporting activity which can be dangerous if not done by skilled persons under proper conditions. The product being advertised had nothing to do with the activity. The advertisement was not directed toward encouraging others to undertake the sport but only to drink "Mountain Dew." Pepsico breached no duty, and Sakon's accident was not the foreseeable consequence of Pepsico's advertisement.
The logical corollary to recovery in this case would be that advertisers and broadcasters would be subject to liability because children sought to duplicate acts of violence which they saw on television. There would be a total absence of any standard to measure liability. See Zamora v. Columbia Broadcasting Sys., 480 F. Supp. 199 (S.D.Fla. 1979) (rejecting claim that minor plaintiff developed a sociopathic personality by watching violence on television). Relevant to this issue are introductory comments on the subject of proximate cause in 4 F. Harper, F. James & O. Gray, The Law of Torts § 20.4, at 131-32 (2d ed. 1986):
It should be noted at this point that many courts and legal writers have stressed the fact that policy considerations underlie the doctrine of proximate cause. Of course they do, but the policies actually involved often fail to get explicit treatment. One consideration that is common to all cases under any system is the practical need to draw the line somewhere so that liability will not crush those on whom it is put... .
Another policy consideration that pervades all the cases is the need to work out rules that are feasible to administer, and yield a workable degree of certainty.
(Footnotes omitted.)
There is no decision in the United States which has imposed liability under facts analogous to those in the instant case. The cases cited by appellant are all Federal Trade Commission (FTC) consent orders. No legal standard of duty is set forth in a consent order, and there is no legal precedent arising from consent orders. Moreover, unlike the instant case, all of the cited FTC cases involved alleged advertising problems which were directly related to the use of the products themselves. The Pepsico commercial cannot be deemed to constitute false, misleading, or deceptive advertising so as to fall within the scope of the Florida laws on deceptive and unfair trade practices.
The shortcomings in appellant's position are best expressed by the order denying liability entered by the federal district judge in this case.
To establish liability upon defendant, defendant's action must be deemed by law to be the proximate cause of Michael *167 Sakon's injuries. "Proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Bryant v. School Board of Duval County, Florida, 399 So.2d 417, 420 (D.C.A. Fla. 1981). Was it reasonable foreseeable by one exercising reasonable care that Michael would undertake to perform a lake jumping and be injured thereby? I think not any more than the showing of high wire walking or trapeze artists swinging and jumping through the air, as shown on TV, performed by circus actors, would alert one that observers might undertake such an act.
Plaintiffs do not suggest defendant breached any statutory duty. Nor do plaintiffs support their contentions with a common law basis. What is asked is that the court hold, as a matter of law, that the allegations of the complaint create a cause of action in favor of plaintiffs against defendant. To be sure, there must be some limit on the kinds of injuries for which another must pay compensation. As pointed out in Zamora, supra:

A recognization of the "cause" claimed by the plaintiffs would provide no recognizable standard for the television industry to follow: 480 F. Supp. at 202.
As the pleadings set forth, the commercial shows one, after performing an unusual and exciting act, relaxing by drinking a Mountain Dew. Plaintiffs allege that the commercial should have warned all observers of the danger of undertaking such an act. What warning would really suffice in order to avoid liability? For instance, should it specify the depth of the water? If too shallow, the actor might strike the bottom. If too deep, he might drown. Must the actor be warned he must be able to swim? Must he be warned how to prevent the bicycle from injuring him? The court should not undertake to identify or set the standards to be followed by commercials of this nature.
There is not the slightest allegation the commercial in any way suggested that the viewers undertake the lake jumping. The foreseeability of plaintiff's action was no more real than would be the foreseeability that persons attending the circus would undertake performance of acts done by the entertainers, whether on high wires, playing with animals or swallowing a sword. Should the operator of a ski area, when advertising and showing persons skiing, be required to warn viewers or readers they need to take lessons before trying to ski? Should advertisements of water ski areas warn that water skiing is dangerous, and that one should not attempt to ski over a ramp? To be sure, there is danger of injury in these sports by one inexperienced, but does the failure to warn in the advertisement constitute a breach of duty to one who observes it?
Here, there was no duty to warn nor are there allegations of a breach of any duty owing by defendant to plaintiffs, hence no action for negligence.
Sakon v. Mountain Dew, No. 86-483-Civ-Orl-18, slip op. at 5-7 (M.D. Fla. March 5, 1987).
We note that the certified question is broadly framed. We qualifiedly answer in the negative based upon the facts here and remand to the United States Court of Appeals for the Eleventh Circuit for its disposition of the matter.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., dissents.
NOTES
[1] All of these cases involve suits on the content of noncommercial broadcasts.