A89A1173. S & W SEAFOODS COMPANY et al. v. JACOR BROADCASTING OF ATLANTA et al.

(390 SE2d 228)

BANKE, Presiding Judge.

This action arises out of comments broadcast by WGST Radio talk-show host Tom Houck on a restaurant review segment of his listener call-in show broadcast on November 6, 1987. A discussion of the restaurant owned by plaintiff S & W Seafoods Company commenced when a listener telephoned Houck to report, over the air, that he had received unsatisfactory service at the restaurant. Defendant Houck directed his program producer, Marcy Rubin, to telephone S & W and invite a representative to respond to the listener's complaint over the air. Rubin spoke with the restaurant manager, plaintiff Robert Weinberg, who declined to participate in the radio broadcast. Although plaintiff Weinberg disputes Rubin's account of the conversation, Rubin reported to defendant Houck that plaintiff Weinberg had been rude to her and insulted her over the telephone. During a news and commercial break, Houck telephoned Weinberg; and, again, the content of that conversation is disputed. However, when Houck returned to the air, he commenced a series of critical and unflattering comments about the restaurant and Weinberg. On the basis of these comments,[1] Weinberg and S & W sued to recover damages based on

---

[1] Those comments specifically objected to by plaintiffs are as follows:

1. "But this guy named Bob Weinberg who owns S & W Seafood up on Roswell Road, where I've been before and where I must tell you the truth. Where the gumbo tastes like yesterday's leftover 'blach' is just a total ass. . . ."

theories of defamation, intentional infliction of emotional distress, negligence, invasion of privacy, and tortious interference with business relations. The trial court granted the defendants' motion for summary judgment in the action, concluding that each comment was either (1) an expression of opinion and therefore constitutionally protected speech; (2) hyperbole which could not reasonably have been interpreted by the listeners as a statement of fact; or (3) a statement of fact which was not proved by the plaintiffs to be false. *Held*:

1. The trial court did not err in granting summary judgment on plaintiffs' defamation claims. Defamation by broadcast includes ele-

---

2. "Yeah, that that gumbo they have up there tastes like it's yesterday's slop."

3. "[It's] these kind of restaurateurs that give people in the profession a bad name."

4. "I have never seen anything like it — S & W. . . . [T]he manager just personally insulted our coordinator, Marcy Rubin. Let me go up there and catch you myself man. . . . We need rotten tomatoes or apples to go bombard the place. . . . I am gonna come see you personally after this buddy."

5. "Not only did one of his managers there insult our coordinator, Marcy Rubin, but this guy Bob Weinberg, who owns the place S & W is an ass."

6. "The guy is rude, the guy is . . . obviously . . . lucky that he has made it this far in the restaurant business obviously."

7. "But they have been acting pretty horrendous today. Particularly a guy named Bob Weinberg at the S & W Restaurant on Roswell Road."

8. "[H]e tows away cars every night . . . parked there long after the restaurant is closed."

9. "Just go by and spit in his face for me will you? . . . I'm sorry I'm so mad, but this guy was just absolutely terrible . . . but this guy was really bad news."

10. "Another part of the owner's conspiracy to get back at me. . . . I am not going to take any calls 'cause I know this guy is out there is calling his friends and saying, 'Get through, get through, get through, get through.' "

11. "I am going to try to get him on the show. I guess . . . I should wear a catcher's mask or . . . [w]hat should I wear . . . a plate of armor? . . . Bullet proof vest?"

12. "I am going to figure out whether I need to be in some kind of little bullet proof room here. But I have heard some horror stories about him off the air, not on the air, but off the air."

13. "[W]e also have not been able to reach anybody thus far at the S & W . . . we're finding that they're not willing to come to the telephone just yet. What a bunch of cowards in the restaurant business in this town. They're giving the . . . restaurant business a bad name around here, I tell you they're really giving them a bad name."

14. "Anybody up there, near there right now, would you do me a favor. Particularly if you're on a mobile phone. Would you go into that restaurant right now, the S & W Seafood Restaurant on Roswell Road and find out who that manager is and tell him that I am going up there and kick his you-know-what."

15. "Now one more thing I want to tell you, I really mean this, Okay. Go by and see this guy Bob Weinberg at S & W on Roswell Road. Tell him he stinks."

16. "We've met some angry restaurateurs today . . . particularly this guy Bob Weinberg up here at S & W Restaurant on Roswell Road. The guy must be really insecure."

17. "[T]hey have been acting pretty horrendous today. Particularly a named Bob Weinberg at the S & W Restaurant on Roswell."

18. "A big finger . . . still goes to you know who, on Roswell Road, S & W."

19. "Go by there today and give a little five fingers in the face there to Bob Weinberg."

ments of both libel (OCGA § 51-5-1) and slander (OCGA § 51-5-4). See *Montgomery v. Pacific & Southern Co.*, 131 Ga. App. 712 (2) (206 SE2d 631) (1974). We agree with the lower court that the statements at issue in this case were not actionable under these statutes, either because they were shown not to have been false or because they fell within the ambit of protected speech.

"[T]here is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 339 (94 SC 2997, 41 LE2d 789) (1974). In regard to the comments made about the food and service at plaintiffs' restaurant, the case is similar to *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745 (337 SE2d 770) (1985), in which a lawyer took offense at the professional ability rating he had received. We upheld the lower court's grant of judgment on the pleadings to the defendant in that case, stating that "[t]he expression of opinion on 'matters with respect to which reasonable men might entertain differing opinions' [cit.] is not libelous." Id. at 747.

Some of Houck's comments referred to statements which had been made to him by call-in listeners to the effect that Weinberg had had cars towed from the restaurant parking lot. The burden is on the plaintiffs to prove the falsity of an allegedly libelous statement, see *Philadelphia Newspapers v. Hepps*, 475 U. S. 767 (106 SC 1558, 89 LE2d 783) (1986). Houck testified in his deposition that he believed this information to be accurate because of the consistency of the remarks made on the subject by several different callers, and Weinberg himself implicitly confirmed the truth of these statements in his deposition. As the record contains no contrary evidence suggesting that the comments concerning car-towing were false, the trial court correctly concluded that they could not be considered defamatory.

2. While the expressions of opinion made during the broadcast were constitutionally protected, we cannot conclude as a matter of law that such protection extends to Houck's exhortations to his listeners to "[g]o by and see this guy Weinberg at S & W on Roswell Road [and] [t]ell him he stinks," to "go by and spit in his face for me," and to "[g]o by there today and give a little five fingers in the face . . . to [him]." An "utterance is not protected if it 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.' " *Walt Disney Productions v. Shannon*, 247 Ga. 402, 404, fn. 2 (276 SE2d 580) (1981) quoting from *Brandenburg v. Ohio*, 395 U. S. 444, 447 (89 SC 1827, 23 LE2d 430) (1969). Accord *Chaplinsky v. New Hampshire*, 315 U. S. 568, 572 (62 SC 766, 86 LE 1031) (1942) (holding that the First Amendment does not protect utterances which "tend to excite an immediate breach of the peace").

Although it appears from the record that none of Houck's listen-

ers actually followed his advice to go to the restaurant and spit on Weinberg or confront him with insulting words and gestures, it does not follow that Weinberg had no reason to fear such a response. When Houck made the statement, "Go by there today and give a little five fingers in the face there to Bob Weinberg," he was speaking to a specific call-in listener, who responded by stating: "Yeah, I might do that, for sure. . . ." Weinberg testified that numerous profane telephone calls were in fact directed to him following the broadcast, both at the restaurant and at his home, causing him to become "real nervous and shaky for about . . . a week or ten days." Construing the evidence most strongly against the appellees as movants on motion for summary judgment, and considering the fact that the remarks in question were made to the public at large over a commercial radio station in an apparent spirit of animosity, we believe a factfinder might reasonably conclude that they were likely to provoke an imminent breach of the peace.

For the same reasons, we further conclude that a factfinder might reasonably consider the statements sufficiently outrageous and egregious to support an award of damages for intentional infliction of emotional distress. A defendant may be held liable for the tort of intentional infliction of emotional distress where his conduct is "of such serious import as to *naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." (Emphasis from original.) *Moses v. Prudential Ins. Co. of America*, 187 Ga. App. 222, 225 (369 SE2d 541) (1988). The plaintiff in *Moses* had received a threatening message from his former boss on his telephone answering machine advising him to quit soliciting his former employer's customers "or you are going to find your butt in court or your neck broken somewhere." We held that, "[c]onsidering the totality of the circumstances . . . , including the language used in the offensive message, the means by which the message was delivered to plaintiff and the relationship of the parties, . . . the threatening and offensive language used in this instance could not have reasonably and foreseeably resulted in the mental distress of which [the plaintiff complained] because the offending message did not, as a matter of law, rise to the requisite level of outrageousness and egregiousness." Id. at 225-6. Compare *Greer v. Medders*, 176 Ga. App. 408 (336 SE2d 328) (1985).

In contrast to the statements in *Moses*, supra, the statements at issue here were not mere warnings left on an answering machine by an individual with whom the plaintiff had an existing personal or business relationship. Taken at face value, they were instead exhortations to the public at large to go to Weinberg's place of business and confront him in a hostile and insulting, if not assaultive, manner. Of course, reasonable men and women might differ as to whether these

exhortations were meant literally and whether they were reasonably likely to be acted upon by members of the listening public. However, "[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement of Torts (Second), § 46, Comment b. Accordingly, we hold that the trial court erred in granting summary judgment to the defendants on plaintiff Weinberg's claim for actual and punitive damages for intentional infliction of emotional distress.

3. Since there was no physical injury involved in this case, and since this state recognizes no cause of action for *negligent* infliction of emotional distress, see *Hamilton v. Powell, Goldstein, Frazer, & Murphy*, 252 Ga. 149 (311 SE2d 818) (1984), summary judgment was properly granted to defendants on plaintiffs' negligence claim.

4. The defendants were also entitled to summary judgment on the plaintiff's invasion of privacy claims. "[A] constitutionally privileged statement of opinion cannot form the basis of a claim for invasion of privacy by placing a person in a false light." *Ault v. Hustler Magazine*, 860 F2d 877, 880 (9th Cir.), cert. den., 109 SC 1532 (1988). Moreover, the plaintiffs waived their right to be "let alone" in regard to the operation of their restaurant by inviting and advertising for public patronage. See *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68) (1905).

5. The plaintiffs' claim for damages for tortious interference with business relations is based on the loss of patronage which the restaurant allegedly suffered as the result of the derogatory statements regarding the quality of its food and service. Inasmuch as these statements were constitutionally protected expressions of opinion, the trial court similarly did not err in granting summary judgment to the defendants on this claim. See *Nager v. Lad n' Dad Slacks*, 148 Ga. App. 401 (1) (251 SE2d 330) (1978).

6. For the foregoing reasons, we hold that the lower court erred in granting summary judgment to the defendants on plaintiff Weinberg's claims for damages for intentional infliction of emotional distress but that the court correctly granted summary judgment to the defendants on each of the plaintiffs' remaining claims.

*Judgment reversed. Carley, C. J., Birdsong, Sognier and Beasley, JJ., concur. Deen, P. J., McMurray, P. J., Pope and Benham, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

While I generally share the views of the majority opinion, the present status of the law appears to support the dissent.

Appellee argues that the case of *Hustler Magazine v. Falwell*, 485 U. S. 46 (108 SC 876, 99 LE2d 41) (1988), although involving a "pub-

lic figure," may also apply to a "private figure." Assuming arguendo this is true, this could leave the door ajar for open season on private as well as public figures. As to public figures under *Falwell*, with the exception possibly of stating that one is a crook or has committed a crime, almost anything may be said. The language in *Falwell* (suggesting in a magazine article that Falwell's first sexual experience was incest with his mother in an outhouse), although labeled a parody, is far more harsh and severe than what is charged in the instant case (suggesting that the owner of a restaurant should be spit upon, that the gumbo tasted like yesterday's slop, that he should receive the five-finger award, and that "he stinks"). Acknowledging that there exists a heavier duty placed upon radio and television media toward protecting the public than the responsibility bearing upon the magazine and newspaper industry (the former uses airwaves belonging to the public and is regulated, which is inapplicable to the latter), *Miami Herald Pub. Co. v. Tornillo*, 418 U. S. 241 (94 SC 2831, 41 LE2d 730) (1974); *Brandywine-Main Line Radio v. Fed. Communications Comm.*, 473 F2d 16, 64 (1972), nevertheless, the protected speech cases of the United States Supreme Court providing wide latitude are binding upon this court, whether we agree with them or not. Chief Justice Burger has cautioned that the only acceptable remedy is "a spirit of responsibility . . . and civility . . . on the part of those who exercise the guaranteed freedoms of expression."

The holding in *Texas v. Johnson*, 491 U. S. ___ (109 SC 2533, 105 LE2d 342) (1989) (that the flag of the United States may be burned, with protestors chanting, "America, the red, white, and blue, we spit on you"), is again seemingly stronger and more unsavory, and therefore more likely to cause emotional distress to the several witnesses (some of whom may have fought for their country and their flag), than what was said in the case under consideration. The threats made in *Moses v. Prudential Ins. Co. of America*, 187 Ga. App. 222 (369 SE2d 541) (1988) (that if you do not refrain from doing certain things you will "find your butt in court or your *neck broken* somewhere" (emphasis supplied)), again appear to be language that is more frightening and horrifying and that should receive less protection than the statements made in the case we now review. These are a direct and immediate threat to a specific person to break his neck or kill him, and the holding in *Moses* was that this did not state an actual case for "emotional distress," as the severity requirements were not met.

The whole-court case of *Brooks v. Stone*, 170 Ga. App. 457, 458 (317 SE2d 277) (1984) (containing "we love to hump bitches in heat. Say, Ms. Brooks, when do you come in season?"), held that there was a jury question. The latter case involved libel and was only a physical precedent, inasmuch as two judges concurred in the judgment only;

and, even if applicable to emotional distress, *Brooks* is because of the 4-2-3 split vote not controlling. However, *Moses* is a binding precedent and appears to be on point and therefore must be either overruled or followed. Compare *Davenport v. State*, 184 Ga. App. 214 (361 SE2d 219) (1987), the majority opinion and special concurrence, as to allegedly obscene language used relating to and bearing on "fighting words" and inciting an immediate breach of peace. Reluctantly, on the basis of the cases cited and reviewed and on the *Moses* case in particular, I agree with Judge Pope's dissent that the judgment should be affirmed.

POPE, Judge, dissenting.

I conclude that all of defendant Houck's comments were constitutionally protected. I do not agree that any of Houck's comments can reasonably be considered actionable as fighting words or as threats sufficient to support a claim for intentional infliction of emotional distress. Under the "fighting words" exception to First Amendment protection, for a comment to lose the constitutional protection of freedom of speech it must be "directed to inciting or producing an imminent lawless action and [must be] likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U. S. 444, 447 (89 SC 1827, 23 LE2d 430) (1969). Houck's invitation to his listeners to go by the restaurant and "give a little five fingers in the face there to Bob Weinberg" and to "go by and spit in his face for me" (see footnote) did not incite imminent lawless action. It could not reasonably have been interpreted by the listeners to the program as an imminent direction to assault Weinberg but was simply hyperbole or a mocking exaggeration of Houck's negative opinion of Weinberg and the restaurant.

The comments that Houck was "going to come up there and kick his you-know-what" and that he was "gonna come see [him] personally after this . . ." (see footnote) do not, in my opinion, meet the severity test for creating a jury issue for emotional distress as set forth by this court in *Moses v. Prudential Ins. Co.*, 187 Ga. App. 222 (369 SE2d 541) (1988). When the totality of the circumstances are considered, pursuant to the standard set forth in *Moses*, these comments, again, must be considered as hyperbole or sarcastic humor. Moreover, the comments made by Houck in a radio station studio some distance away from the plaintiff, who was at his restaurant, did not create a clear and present danger of personal injury to the plaintiff and are therefore not actionable. I believe "the defendants' motions for summary judgment were correctly granted by the trial judge, because it cannot be said that the statements uttered during the course of this [radio] program gave rise to a clear and present danger of personal injury to the plaintiff." *Walt Disney Productions v. Shan-*

*non*, 247 Ga. 402, 404 (276 SE2d 580) (1981). These comments, while obnoxious, could not reasonably be interpreted as fighting words. And the mere fact that they were offensive, without creating a clear and present danger of physical harm, does not strip them of their constitutional protection. See *Hustler Magazine v. Falwell*, 485 U. S. 46 (108 SC 876, 99 LE2d 41) (1988). Consequently, I would hold that defendants are entitled to summary judgment on all claims.

I am authorized to state that Presiding Judge Deen, Presiding Judge McMurray and Judge Benham join in this dissent.

DECIDED DECEMBER 20, 1989 —
REHEARING DENIED JANUARY 17, 1990 — 

*Carr, Tabb & Pope, W. Pitts Carr, Erick E. Huber*, for appellants.

*Powell, Goldstein, Frazer & Murphy, James C. Rawls, Frank Love, Jr., Jennifer F. Weiss, Steven J. Labovitz*, for appellees.