## A90A1500. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. MATHIS.

(398 SE2d 387)

DEEN, Presiding Judge.

In August of 1987 appellant issued to appellee an insurance policy covering an automobile owned by Mrs. Mathis and intended to be driven principally by the Mathises' 18-year-old grandson, who resided with his grandparents. The policy provided personal injury protection (PIP) benefits of $10,000 per person per accident and medical benefits of $1,000 per person. Some six weeks after issuance of the policy, the grandson and one of two passengers were killed in a one-car accident.

On October 5, 1987, three days after the fatal accident and one day after the funeral, appellee and her family notified appellant's agent in person and allegedly inquired as to the amount of insurance coverage available. According to appellee, the agent informed them that up to $10,000 would be available for funeral and burial expenses, the exact total to be determined by the actual amount of funeral expenses incurred. The agent contended at trial that during this meeting he had "broken down" the $10,000 into various categories of allowable expenses, including medical expenses, funeral expenses, and others. Mrs. Mathis testified that after the meeting she had ordered a monument costing $4,926.60.

Actual expenditures for the funeral arrangements, including the monument, totaled $9,469.10, and on October 9, one week after the accident, appellee and her family went to appellant/insurer's office to file their claim. Appellant's adjuster informed them that the coverage available for young Mathis' funeral expenses totaled $4,500; and that the same amount was available for the other decedent. Mrs. Mathis protested, and an altercation ensued, during which the adjuster allegedly told Mrs. Mathis that she could take the $4,500 or leave it and could hire a lawyer if she were dissatisfied. The adjuster also allegedly threw the funeral bills across his desk towards Mrs. Mathis, pounded on the desk, and pointed his finger at her.

The Mathises then filed an action in two counts, breach of contract and intentional infliction of emotional distress. The trial court granted defendant/appellant summary judgment on the first count, and the jury trial of the second count resulted in a hung jury and a mistrial.[1] Appellant moved for judgment notwithstanding the mistrial, and, upon denial of the motion, sought a certificate of immediate review. We granted an interlocutory appeal to consider the sole enumeration of error: denial of the motion for judgment notwith-

---

[1] Mr. Mathis was voluntarily dismissed as a party plaintiff.

standing the mistrial. *Held*:

Scrutiny of the record reveals that the policy issued to the Mathises provides $1,500 for funeral/burial expenses under basic PIP; $2,000 in additional PIP coverage that may be applied towards funeral/burial expenses; and $1,000 in medical payment coverage that can be applied to funeral/burial expenses in lieu of medical expenses. It thus appears that the insurance adjuster's statement that $4,500 was the maximum available for funeral/burial expenses was correct. See OCGA §§ 33-34-4; 33-34-5. We can only speculate as to the reasons that the grief-stricken family might have left the October 5 meeting with the sales agent under a misapprehension as to the relationship between the amount of allowable funeral/burial expenses and the overall limits of the policy.

Mrs. Mathis' daughter corroborated her mother's testimony as to the adjuster's behavior when the bills were presented to him on October 9; the sister of the other decedent testified that the adjuster had treated her in a rude and arrogant manner during a meeting held an hour or so before that between the adjuster and the Mathises. The retiring adjuster, who had been present during both these meetings, testified that the incoming adjuster behaved in a courteous manner, did not raise his voice, did not throw the bills on the desk, and did not point his finger, but that Mrs. Mathis and her daughter had both appeared upset and had raised their voices. A secretary working in an outer office testified that the only sounds she heard coming from the adjuster's officer were the voices of either Mrs. Mathis or her daughter.

An action for intentional infliction of emotional distress will lie only when "the defendant's actions . . . have been so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff. [Cits.] However, our courts have also recognized that 'there is authority to sanction a recovery in tort where the defendant has wilfully and wantonly caused emotional upset to the plaintiff through the use of abusive or obscene language.' [Cits.]" *Moses v. Prudential Ins. Co. of America*, 187 Ga. App. 222, 224 (369 SE2d 541) (1988). According to the Restatement (Second) of Torts, Ch. 1, Emotional Distress, § 46 (1), comment d, "[t]he cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous."

The record shows that, at appropriate junctures during the course of the trial, defendant/appellant insurer had moved for directed verdict, alleging inter alia that the evidence, when properly construed, was insufficient to support a verdict for plaintiff, and did not rise to the level of sufficiency to sustain a cause of action for intentional infliction of emotional distress. Defendant/appellant thereby technically cleared the way for a motion for judgment n.o.v. had an unfavorable verdict been rendered below. "Not later than 30 days af-

ter entry of judgment, a party who has moved for directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict. . . ." OCGA § 9-11-50 (b). This statute further provides that "if a verdict was not returned, such party . . . may move for judgment in accordance with his motion for a directed verdict." Id. The statutory standard for granting a directed verdict is that "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. . . ." OCGA § 9-11-50 (a).

In the instant case the trial court, according to the record before us, had denied each of appellant's motions for directed verdict. We conclude that its denial of appellant's motion for a post-trial judgment "in accordance with his motion for directed verdict," OCGA § 9-11-50 (a), was consistent with his prior rulings and therefore proper. Compare *S & W Seafoods Co. v. Jacor Broadcasting &c.*, 194 Ga. App. 233 (390 SE2d 228) (1990); *Gordon v. Frost*, 193 Ga. App. 517 (388 SE2d 362) (1989).

We find no error here.

*Judgment affirmed. Pope, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

Considering fully the testimony of plaintiff and her daughter and giving berth to reasonable inferences, I concur in the conclusion that defendant is not entitled to a judgment notwithstanding the mistrial. There are several aspects of the case which are not discussed in the majority opinion but which bear significantly on whether the evidence failed as a matter of law to show the tort of intentional infliction of emotional distress.

First is the element of duty. The majority opinion and many of the cases which precede it focus on the second element, that of breach, determining whether or not the conduct and words of the defendant were so egregious as to constitute breach or at least be subject to such a finding by the trier of fact. See, e.g., *Moses v. Prudential Ins. Co.*, 187 Ga. App. 222 (369 SE2d 541) (1988); *Kornegay v. Mundy*, 190 Ga. App. 433 (1) (379 SE2d 14) (1989); *Quinones v. Maier & Berkele*, 192 Ga. App. 585, 587 (1) (a) (385 SE2d 719) (1989); *S & W Seafoods Co. v. Jacor Broadcasting &c.*, 194 Ga. App. 233 (390 SE2d 228) (1990). But the first question is, what was the defendant's legal duty towards plaintiff, and from whence did it arise? That is to say, one must look at the relationship and respective roles of the parties.

In several cases, the court recognized that the duty arose from the defendant's particular status vis-a-vis the plaintiff. See, e.g.,

*Dunn v. Western Union Telegraph Co.*, 2 Ga. App. 845 (59 SE 189) (1907); *Greer v. Medders*, 176 Ga. App. 408, 409 (336 SE2d 328) (1985); *Anderson v. Chatham*, 190 Ga. App. 559, 567 (8) (379 SE2d 793) (1989); *Gordon v. Frost*, 193 Ga. App. 517, 522 (1) (388 SE2d 362) (1989). Also, *Moses*, cited earlier, referred to "the relationship of the parties" as being instrumental. The court either found or assumed for the purpose of the argument that the businessman, a former supervisor of plaintiff's, had a duty not to intentionally inflict emotional distress.

What we have here is another type of special relationship. The disputing parties are not just two members of the general public. Instead, the alleged tortfeasor was the insurer's representative, with a duty to process the client/insured's claim fairly according to the contract. The jury could find that defendant owed a duty arising out of the business relationship such that his conduct went so far beyond the norms of acceptable business behavior that it was " 'sufficiently extreme and outrageous to result in liability,' " *S & W Seafoods Co.*, supra at 237, quoting from Restatement of Torts (Second).

Secondly, in determining whether a jury could find a breach, "[t]he severity of the emotional distress allegedly produced by the . . . conduct is also a factor in determining liability for [this tort]." *Quinones*, supra at 587, and *Anderson*, supra at 567. It is not merely a factor in establishing damages. Here, there was evidence that as much as a week later, plaintiff was suffering from the effects of the experience to the degree that she sought and obtained medical treatment.

Finally, I concur, having considered the above and concluding that the denial of judgment notwithstanding mistrial was correct because the denials of directed verdict were proper. The majority, on the other hand, holds that the denial of judgment was proper solely on the strength of its consistency with the directed verdict rulings. To the contrary, however, they had to be correct in order for the judgment of denial to be correct. *Simmons v. Watson*, 221 Ga. 765, 767 (2) (147 SE2d 322) 1966).

DECIDED OCTOBER 4, 1990 —
REHEARING DENIED OCTOBER 19, 1990.

*Reinhardt & Whitley, Glenn Whitley*, for appellant.
*Perry, Moore & Studstill, Daniel L. Studstill*, for appellee.